Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
SNELL & WILMER L.L.P.
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
Telephone:  503.624.6800
Facsimile:   503.624.6888
(Additional counsel in signature block)
Attorneys for defendants City of Portland
and Prosper Portland

# UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| EMANUEL DISPLACED PERSONS ASSOCIATION 2; GLORIA CAMPBELL-CASH, ISAAC CAMPBELL, IZEAL CAMPBELL, MARILYN K. HASAN, ROSIE TAYLOR, ELIZABETH FOUTHER-BRANCH, BOBBY FOUTHER, KAREN SMITH, ALICIA BYRD, BRIAN MORRIS, JOANNE BOWLES-SPIRES, CLAUDE BOWLES, MARY BOWLES SHOALS, ROYAL HARRIS, RAHSAAN MUHAMMAD, MIKE HEPBURN, BEVERLY HUNTER, JUANITA BIGGS, CONNIE MACK, TRAVANTE FRANKLIN, DONNA MARSHALL, BARBARA DUMAS, LAKEESHA DUMAS, JAMES SMITH SR., CLIFFORD TYRONE DUMAS, and VALDA MCCAULEY, | Case No. 3:22-cv-01896-SI<br><br>JOINT MOTION TO DISMISS OF DEFENDANTS CITY OF PORTLAND AND PROSPER PORTLAND |
| Plaintiffs, | |
| vs. | |
| CITY OF PORTLAND, PROSPER PORTLAND fka the PORTLAND DEVELOPMENT COMMISSION, and LEGACY EMANUEL HOSPITAL & HEALTH CENTER, | |
| Defendants. | |

## LR 7-1 CERTIFICATION

Undersigned counsel certifies that the parties have conferred, and that the parties did not resolve this motion.

## MOTION

Defendants City of Portland and Prosper Portland fka the Portland Development Commission ("Prosper Portland," "PDC," or "Prosper/PDC") (collectively, "Movants") hereby move to dismiss the Complaint. The Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), because Plaintiffs lack standing as to any claim. To the extent Plaintiffs have standing, the Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) because (1) the claims are time-barred, (2) Plaintiffs fail to state plausible claims for relief pursuant to Fed. R. Civ. P. 8, and (3) the common-law claims are barred by discretionary immunity.

This Motion is based on the following Memorandum, the Court's record in this action, the accompanying Request for Judicial Notice, other matters subject to judicial notice, and such further evidence and argument as may be presented on reply and at the hearing on this Motion.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   SUMMARY OF PERTINENT ALLEGATIONS IN THE COMPLAINT ...................... 3

    A.   Plaintiffs assert that there was a conspiracy to seize homes, and create "blight," in order to eliminate the Central Albina neighborhood near Emanuel Hospital. ................................................................................... 3

    B.   Some Plaintiffs resided in homes that were displaced (the "Resident Plaintiffs"). Other Plaintiffs do not allege that they lived in such homes (the "Non-Resident Plaintiffs"). ....................................................... 5

    C.   All Plaintiffs allege loss of inheritance or family wealth, and some Plaintiffs claim more specific harms. None alleges non-trespassory interference with a property right, as necessary for a nuisance claim. ................. 5

    D.   Allegations relevant to the statutes of limitation. ................................. 7

III.  LEGAL STANDARDS ........................................................................................ 8

    A.   Fed. R. Civ. P. 12(b)(1) .................................................................. 8

    B.   Fed. R. Civ. P. 12(b)(6) .................................................................. 8

IV.   ALL PLAINTIFFS LACK CONSTITUTIONAL OR PRUDENTIAL STANDING AS TO ALL CLAIMS ....................................................................... 9

    A.   The Non-Resident Plaintiffs have not plausibly alleged constitutional standing to bring any of the asserted claims. .......................................... 10

        1.   To have Article III standing, a plaintiff must clearly allege injury in fact. ................................................................................... 10

        2.   The Non-Resident Plaintiffs have not clearly alleged facts demonstrating that they suffered injury in fact as to any claim. .............. 10

    B.   Plaintiffs lack prudential standing to bring any claim because they assert a generalized grievance. ................................................................... 12

    C.   EDPA2 lacks organizational standing. ................................................ 13

    D.   The equitable relief Plaintiffs seek would not redress the injuries they assert. ........................................................................................ 15

V.    THE CLAIMS ARE TIME-BARRED ...................................................................... 15

    A.   In order to be timely, Plaintiffs must rely on delayed accrual, or equitable tolling, of the statutes of limitation. ................................................... 15

    B.   The allegations of the Complaint do not support delayed accrual of any claim. ........................................................................................ 16

        1.   The discovery rule does not apply, as the face of the Complaint demonstrates. ............................................................................ 16

## TABLE OF CONTENTS
(continued)

**Page**

        2.     No allegations support applying the continuing violation doctrine. ........ 18

    C.    Plaintiffs fail to plead concealment with particularity, or even plausibly, and therefore fail to plausibly allege equitable tolling ......................................... 20

VI.    PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE SECTION 1985(3) CONSPIRACY ................................................................................................... 22

VII.    THE COURT SHOULD DISMISS BOTH STATE LAW CLAIMS BASED ON DISCRETIONARY IMMUNITY ...................................................................... 25

VIII.    THE UNJUST ENRICHMENT CLAIM FAILS ON ITS MERITS ............................. 26

IX.    THE NUISANCE CLAIM FAILS ON THE MERITS ................................... 27

X.    CONCLUSION ................................................................................................. 28

# TABLE OF AUTHORITIES

**Page**

Cases

*Abillo-De Leon v. Gonzales,*
    410 F.3d 1090 (9th Cir. 2005) ............................................................................ 16

*Akins v. United States,*
    No. 21-CV-1824-BAS-WVG, 2021 WL 5203294 (S.D. Cal. Nov. 9, 2021) ......................... 11

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................... 9, 25

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................... 9, 23

*Bibeau v. Pacific Nw. Research Found.,*
    188 F.3d 1105 (9th Cir. 1999) ............................................................................ 16

*Bird v. Dep't of Hum. Servs.,*
    935 F.3d 738 (9th Cir. 2019) ......................................................................... 18, 19

*Cada v. Baxter Healthcare Corp.,*
    920 F.2d 446 (7th Cir. 1990) ............................................................................. 17

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
    824 F.3d 1156 (9th Cir. 2016) ............................................................................. 9

*Chandler v. State Far Mut. Auto. Ins. Co.,*
    598 F.3d 1115 (9th Cir. 2010) ......................................................................... 8, 10

*Colquitt v. Mfrs. and Traders Trust Co.,*
    144 F. Supp. 3d 1219 (D. Or. 2015) ..................................................................... 20

*Conerly v. Westinghouse Elec. Corp.,*
    623 F.2d 117 (9th Cir. 1980) ............................................................................. 21

*Coppinger-Martin v. Solis,*
    627 F.3d 745 (9th Cir. 2010) ............................................................................. 18

*Cumming v. Nipping,*
    285 Or. App. 233 (2017) .................................................................................. 26

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ...................................................................................... 10

# TABLE OF AUTHORITIES
(continued)

**Page**

*Davis v. Jefferson Hosp. Ass'n*,
   685 F.3d 675 (8th Cir. 2012) ................................................ 25

*Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*,
   548 F.3d 1184 (9th Cir. 2008) ............................................... 8

*Fors v. Lehman*,
   741 F.2d 1130 (9th Cir. 1984) ............................................... 9

*Gilbrook v. City of Westminster*,
   177 F.3d 839 (9th Cir. 1999) ................................................ 24

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ........................................................ 10

*Gladstone Realtors v. Village of Bellwood*,
   441 U.S. 91 (1979) ............................................................. 12

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ........................................................... 13

*Hinton v. Pac. Enters.*,
   5 F.3d 391 (9th Cir. 1993) ................................................... 21

*Hooper v. N. Bend City/Coos-Curry Hous. Authorities*, 6:16-CV-00005-MC,
   2017 WL 3038253 (D. Or. July 18, 2017) .............................. 26

*Htaike v. Sein*,
   269 Or. App. 284 (2015) ..................................................... 15

*Jewett v. Deerhorn Enterprises, Inc.*,
   281 Or. 469 (1978) ............................................................ 28

*Know Your IX v. DeVos*,
   No. CV RDB-20-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) .................. 14

*Knox v. Davis*,
   260 F.3d 1009 (9th Cir. 2001) ............................................. 18

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ........................................................... 8

*Larisa's Home Care, LLC v. Nichols-Shields*,
   362 Or. 115 (2017) ......................................................... 26, 27

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Ledbetter v. Goodyear Tire & Rubber Co.*,
  550 U.S. 618 (2007) ................................................................................ 20

*Leorna v. U.S. Dep't of State*,
  105 F.3d 548 (9th Cir. 1997) .................................................................... 22

*Logan v. W. Coast Benson Hotel*,
  981 F. Supp. 1301 (D. Or. 1997) .............................................................. 15

*Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................... 10

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) .................................................................................. 10

*Lukovsky v. City & Cnty. of San Francisco*,
  535 F.3d 1044 (9th Cir. 2008) .............................................. 16, 17, 18, 21

*Mark v. State Dep't. of Fish and Wildlife*,
  158 Or. App. 355 (1999) ................................................................ 7, 27, 28

*Mark v. State ex rel. Dep't of Fish and Wildlife*,
  191 Or. App. 563 (2004) ...................................................................... 7, 27

*MAT, Inc. v. Am. Tower Asset Sub, LLC*,
  312 Or. App. 7 (2021) ............................................................................... 21

*Maya v. Centex Corp.*,
  658 F.3d 1060 (9th Cir. 2011) .................................................................... 8

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002) .................................................................................. 19

*Pesek v. Gates*,
  247 Fed. App'x 62 (9th Cir. 2007) ........................................................... 22

*Pettibone v. Biden*,
  No. 3:20-cv-01464-YY, 2021 WL 6503761 (Sep. 13, 2021) ............. 24, 25

*Philpott v. A.H. Robbins Co., Inc.*,
  710 F.2d 1422 (9th Cir. 1983) .................................................................. 20

*RK Ventures, Inc. v. City of Seattle*,
  307 F.3d 1045 (9th Cir. 2002) .................................................................. 16

# TABLE OF AUTHORITIES
(continued)

Page

*Roark v. U.S.*,
No. 6:12-CV-01354-AA, 2013 WL 1071778 (D. Or. Mar. 12, 2013)....................................... 20

*Simon v. E. Ky. Welfare Rts. Org.*,
426 U.S. 26 (1976).................................................................................................................... 13

*Smith v. Pac. Properties and Dev. Corp.*,
358 F.3d 1097 (9th Cir. 2004) ................................................................................................. 13

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).................................................................................................................. 10

*Supermail Cargo, Inc. v. United States*,
68 F.3d 1204 (9th Cir.1995) .................................................................................................... 16

*Taylor v. W. Or. Elec. Co-op., Inc.*,
2005 WL 2709540 (D. Or. Oct. 21, 2005)............................................................................... 22

*Tearpock-Martini v. Borough of Shickshinny*,
756 F.3d 232 (3d Cir. 2014)..................................................................................................... 18

*Torch v. Windsor Surry Co.*,
No. 3:17-cv-00918-AA, 2019 WL 6709379 (D. Or. Dec. 9, 2019)......................................... 21

*TwoRivers v. Lewis*,
174 F.3d 987 (9th Cir. 1999) .............................................................................................. 16, 17

*U.S. Miller*,
317 U.S. 369 (1943).................................................................................................................. 27

*United Airlines v. Evans*,
431 U.S. (1977)......................................................................................................................... 20

*United Bhd. of Carpenters and Joiners of Am., Loc. 610, AFL-CIO  v. Scott*,
463 U.S. 825 (1983).................................................................................................................. 22

*United States v. Kubrick*,
444 U.S. 111 (1979).................................................................................................................. 16

*Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*,
454 U.S. 464 (1982).................................................................................................................. 12

*Verardo v. Or. Dep't of Transp.*,
319 Or App 442 (2022).............................................................................................................. 25

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Ward v. Caulk*,
    650 F.2d 1144 (9th Cir. 1981) ................................................. 19

*Warth v. Seldin*,
    422 U.S. 490, (1975) ............................................................ 12

*Williams v. Owens-Illinois, Inc.*,
    665 F.2d 918 (9th Cir. 1982) ................................................. 18

*Women's Student Union v. U.S. Dep't of Educ.*,
    No. 21-CV-01626-EMC, 2021 WL 3932000 (N.D. Cal. Sept. 2, 2021) ................................. 14

Statutes

42 U.S.C. § 1985 .................................................................... 15

42 U.S.C. § 1985(3) ............................................................ passim

Rules

Fed. R. Civ. P. 8 ..................................................................... 21

Fed. R. Civ. P. 9 ................................................................. 2, 21

Fed. R. Civ. P. 12(b)(1) ........................................................... 8

Fed. R. Civ. P. 12(b)(6) ........................................................... 8

## MEMORANDUM

## I.    INTRODUCTION

Plaintiffs seek recompense for the policies of an era when the federal government funded the destruction of hundreds of communities across the country, including Central Albina, in the name of eliminating "blight" under "slum clearance" laws that required very little community process. "Slum clearance" disproportionately affected communities of color.[1] Thankfully, these early urban renewal laws have since changed and now require that decisionmakers consider community impact.

Plaintiffs request damages, primarily in the form of lost inheritance and generational wealth, stemming from the destruction of the heart of Portland's Black community. They allege that the City and Prosper Portland profited from land taken from that community through the condemnation process and through an alleged conspiracy with defendant Legacy Emanuel Hospital & Medical Center ("Emanuel") to move Plaintiffs' relatives from Central Albina because they were Black. Plaintiffs further ask the Court to enjoin alleged ongoing unjust enrichment and nuisance.

Plaintiffs' recourse for these harms to the Black community impacted by the historic practice of urban renewal in Portland is through the legislature or the executive branch, but not this Court, for several reasons.

First, Plaintiffs lack standing in varying degrees. Those of the Plaintiffs that do not allege they lived in a home subject to a taking all lack Article III standing, as their asserted injuries are "conjectural" and not "concrete"—the standards that governing caselaw requires. All Plaintiffs lack prudential standing because they assert a generalized grievance belonging to the entire Central Albina neighborhood. And plaintiff Emanuel Displaced Persons Association 2

---

[1] Prosper Portland and the City acknowledge, and have acknowledged and denounced, these disproportionate impacts, and have committed themselves to being agents of positive change. *See, e.g.,* "Equity Framework," https://prosperportland.us/wp-content/uploads/2019/08/Equity-Framework-Booklet-web.pdf (August 2019); "History of Racist Planning in Portland," https://www.portland.gov/bps/planning/adap/history-racist-planning-portland (accessed Feb. 11, 2023).

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

("EDPA2") lacks organizational standing based on frustration of mission or diversion of resources, because its stated mission *is* to address the government's assertedly unlawful actions.

<u>Second</u>, Plaintiffs' claims are time-barred as any claims accrued, and applicable statutes of limitation expired, decades ago. Plaintiffs fail to allege sufficient facts to invoke delayed accrual and equitable tolling doctrines to make these claims timely. As described below in Section V.B, the Complaint on its face demonstrates that Plaintiffs' relatives knew, or had reason to know, of alleged potential injury inflicted by Movants as early as 1970 and, at the very latest, Plaintiffs were on notice at least four years ago—beyond the two-year limitation period that applies to the § 1985(3) and unjust enrichment claims.

Moreover, notwithstanding Plaintiffs' repeated assertions that Movants "concealed" unspecified information that prevented Plaintiffs from suing earlier, Plaintiffs allege neither a single act of concealment apart from the conspiracy alleged, nor that Plaintiffs (or their relatives) undertook due diligence to discover whether they had potential claims—both of which are required for alleging concealment sufficient to toll applicable statutes of limitation. Furthermore, the original Emanuel Displaced Persons Association ("EDPA")[2] and concerned residents hired counsel no later than 1971 in connection with Defendants' actions—precluding equitable tolling that would permit this lawsuit filed in 2022. To the extent Plaintiffs allege concealment through fraud, Plaintiffs must plead with specificity pursuant to Fed. R. Civ. P. 9. They do not do so.

<u>Third</u>, Plaintiffs fail to state a plausible claim for 42 U.S.C. § 1985(3) conspiracy, which requires more than conclusory allegations.

Finally, Plaintiffs' unjust enrichment and nuisance claims fail. Both claims are barred by discretionary immunity pursuant to ORS 30.265(6)(c). The unjust enrichment claim also fails because Plaintiffs do not identify a traditionally recognized category of unjust enrichment into which their claims fit, as Oregon law requires. And the nuisance claim fails because (1) Plaintiffs do not identify any conduct by the City or Prosper Portland that interfered with a property right that Plaintiffs, who did not own the properties at issue, possessed; and (2) with respect to the

---

[2] EDPA and EDPA2 are distinct, and EDPA2 is not EDPA's successor.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

claim for public nuisance, Plaintiffs do not explain why a vacant lot is a nuisance to the public nor why any Plaintiff has suffered particular injury from vacant lots differentiated from the public at large.

## II.  SUMMARY OF PERTINENT ALLEGATIONS IN THE COMPLAINT

Movants do not here repeat the allegations of the 54-page Complaint, but rather address them in subsequent sections as necessary when advancing specific arguments. This section is Movants' attempt to summarize the allegations in ways relevant to the Motion.

### A.  Plaintiffs assert that there was a conspiracy to seize homes, and create "blight," in order to eliminate the Central Albina neighborhood near Emanuel Hospital.

Central Albina's predominantly Black neighborhood formed largely out of people displaced by the Vanport flood in 1948. (*See, e.g.,* Compl., ¶ 41.) A year after the flood, the federal government enacted the Housing Act of 1949, Pub. L. 81-171, pursuant to which local authorities and private enterprises could obtain funds to redevelop urban land. (*See* Compl., ¶ 43.) Plaintiffs allege that the redevelopment funded by the Housing Act was intended to clear "slums" and "'blighted' urban centers," (*id.*), and that these efforts "targeted aging, close-in neighborhoods for redevelopment and disproportionately impacted Black communities and other communities of color concentrated in those areas following white abandonment to the suburbs." (*Id.*)

Plaintiffs allege that, in the late 1950s, the predecessor of defendant Legacy Emanuel Hospital & Health Center ("Emanuel") began discussions with the City to create an urban renewal zone (Compl., ¶ 45), a precursor to obtaining Housing Act funds. In 1962, Emanuel allegedly informed the City that it wished to prepare a development plan to expand and modernize the Emanuel campus. (*Id.*) Plaintiffs allege that to receive funds under the Housing Act of 1949, and the subsequently enacted Hill-Burton Act that granted federal monies for certain urban hospitals, Movants needed to find "blight" in Central Albina. (Compl., ¶ 45.)

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

It is against this alleged background that Plaintiffs claim the City and Portland Development Commission (Prosper's prior name) implemented a conspiracy to remove Black people from Central Albina. To support this claim of conspiracy, Plaintiffs allege:

a)      Personnel from Emanuel visited the homes of Plaintiffs' relatives who lived in Central Albina and told them that they needed to leave their homes or the City would take them. (Compl., ¶¶ 5-12.) This occurred from "the late 1950s until the late 1960s." (Compl., ¶ 3.) Plaintiffs allege that Emanuel bought and demolished "100-plus homes" during this time period. (*Id.*)

b)      The City and Portland Development Commission "had secretly agreed to compensate Emanuel for the full cost of the . . . purchases and demolitions." (*Id.*) In support of this theory, Plaintiffs allege that in 1970, the City awarded to Emanuel tax credits in the amount of $835,584, the alleged amount that it cost Emanuel to purchase and demolish Plaintiffs' relatives' homes in Central Albina. (Compl., ¶ 57.) Plaintiffs postulate that Emanuel "never would have expended so much time, effort, and money" if the City or PDC had not promised in advance that Emanuel would be reimbursed. (*Id.*)

c)      Later, from "the late 1960s until 1973," (*id.*), Plaintiffs allege that Movants employed "urban renewal and eminent domain" to take and demolish additional Central Albina homes. (*Id.*) Although some of the Plaintiffs allege that they "know[]" their relatives did not receive just compensation for their homes, (*e.g.* Compl., ¶ 9), they do not allege that the condemnation process failed to follow the requirements of the Takings Clause of the federal and state constitutions.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

**B.**    **Some Plaintiffs resided in homes that were displaced (the "Resident Plaintiffs"). Other Plaintiffs do not allege that they lived in such homes (the "Non-Resident Plaintiffs").**

Plaintiffs seek recompense for the destruction of their, and their relatives', neighborhood and community. (Compl. at 1; ¶ 2.) Plaintiffs thus vary widely in terms of their connections to the homes taken as part of the Emanuel development plan. No Plaintiff is alleged to have owned any of the homes involved.

Although some of the Complaint's allegations are unclear as to whether a particular Plaintiff resided in a home taken as part of the Emanuel development plan, the following Plaintiffs, who will be referred to as the **"Resident Plaintiffs,"** appear to have resided in a demolished Central Albina home: Gloria Campbell-Cash, Isaac Campbell, Izeal Campbell, Marilyn Hasan, Rosie Taylor, Karen Smith, Brian Morris, Donna Marshall, Royal Harris, Connie Mack, and Beverly Hunter.

The following Plaintiffs, the **"Non-Resident Plaintiffs,"** appear not to have resided in a razed Central Albina home: Valda McCauley, Elizabeth Fouther-Branch, Bobby Fouther, Alicia, Byrd, Joanne Bowles-Spires, Claude Bowles, Mary Bowles Shoals, Rahsaan Muhammad, Travante Franklin, Juanita Biggs, Mike Hepburn, Barbara Dumas, Lakeesha Dumas, James Smith Sr., and Clifford Tyrone Dumas.

EDPA2 does not allege that it is standing in for any Plaintiff or group of Plaintiffs. Rather, it alleges harm to the organization itself.

**C.**    **All Plaintiffs allege loss of inheritance or family wealth, and some Plaintiffs claim more specific harms. None alleges non-trespassory interference with a property right, as necessary for a nuisance claim.**

The Complaint alleges that Plaintiffs suffered injury "including but not limited to loss of family residences, businesses, community cohesion, educational opportunities, and generational wealth building." (Compl., ¶ 86; *see* Compl., ¶¶ 93, 97.)

Additionally, some Plaintiffs assert more specific injuries, many of which are along the

Page 5 – CITY AND PROSPER'S MTD

same lines. The following chart, which is sorted by Resident/Non-Resident Plaintiff, and then alphabetically, summarizes the more specific allegations of injury:

| | Resident Plaintiff? | Alleged specific harm | Paragraph |
|---|---|---|---|
| Beverly Hunter | Yes | Economic harm, social stress | 24 |
| Brian Morris | Yes | N/A | 15 |
| Connie Mack | Yes | Deprived of inheritance, social stress | 22 |
| Donna Marshall | Yes | Economic harm and emotional damages | 19 |
| Gloria Campbell-Cash | Yes | Economic harm, deprived of inheritance | 5 |
| Isaac Campbell | Yes | Economic harm, deprived of inheritance | 6 |
| Izeal Campbell | Yes | Economic harm, deprived of inheritance | 7 |
| Karen Smith | Yes | Deprived of inheritance | 13 |
| Marilyn Hasan | Yes | Social stress | 8 |
| Rosie Taylor | Yes | Social stress | 9 |
| Royal Harris | Yes | Deprived of inheritance | 21 |
| Alicia Byrd | No | Deprived of inheritance | 14 |
| Barbara Dumas | No | N/A | 27 |
| Bobby Fouther | No | Deprived of inheritance | 12 |
| Claude Bowles | No | N/A | 17 |
| Clifford Tyrone Dumas | No | N/A | 30 |
| Elizabeth Fouther-Branch | No | Deprived of inheritance | 11 |
| James Smith Sr. | No | N/A | 29 |
| Joanne Bowles-Spires | No | Economic harm | 16 |
| Juanita Biggs | No | Deprived of inheritance | 25 |
| Lakeesha Dumas | No | Deprived of heritage and legacy | 28 |
| Mary Bowles Shoals | No | N/A | 18 |
| Mike Hepburn | No | N/A | 26 |
| Rahsaan Muhammad | No | N/A | 20 |
| Travante Franklin | No | N/A | 23 |
| Valda McCauley | No | N/A | 10 |

*Figure 1 – Alleged harm by resident status*

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

As discussed below in Section VIII, no Plaintiff alleges facts supporting a plausible claim that the City or Portland Development Commission created a private nuisance, which is defined as an "unreasonable non-trespassory interference with another's private use and enjoyment of land," *Mark v. State ex rel. Dep't of Fish and Wildlife*, 191 Or. App. 563, 572-73 (2004), other than by alleging that there was no actual "blight" in Central Albina and that Movants allegedly conspired to find it where none existed. (*See, e.g.,* Compl., ¶ 5.) And no Plaintiff identifies a public nuisance other than the vacant land unused by Emanuel, nor alleges that the alleged nuisance has caused any Plaintiff injury distinct from that allegedly suffered by the general public—as required for a public nuisance. *Mark v. State Dep't. of Fish and Wildlife*, 158 Or. App. 355, 359-60 (1999).

    **D.**      **Allegations relevant to the statutes of limitation.**

As discussed below in Section V, the applicable statutes of limitation bar Plaintiffs' claims, and the Complaint's allegations do not support applying any doctrine of accrual or tolling. The following allegations are relevant to the statute of limitations argument:

- Families, including some of the Plaintiffs' families, discussed no later than "the early 1970s" the allegedly wrongful acts of the City. (Compl., ¶ 13; *see* Compl., ¶ 14 [rumors of demolitions "began to swirl"].)

- In September 1970, residents organized the EDPA to "object to the deception, pressure, threats, fear, and indignity" that Central Albina residents faced, and to block the federal Department of Housing and Urban Development (HUD) from providing condemnation funds to the City and Portland Development Commission. (Compl., ¶ 58.)

- "EDPA retained legal representation and submitted a brief to HUD in November 1970, challenging PDC's relocation plan for failing to comply with statutory relocation requirements." (Compl., ¶¶ 60-62.)

- Suspicions of bias were raised by survey respondents in 1971. (Compl., ¶¶ 63.)

- The land at issue has been visibly vacant for decades.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

- Plaintiff EDPA2 commissioned the Portland State University (PSU) study four years ago, outside the statute of limitations for any claim, presumably because they believed Plaintiffs had been wronged. (Request for Judicial Notice, Exhibit 1, p. 7 ["This project is a dream come true conceived over 4 years ago and now realized."].)

- Plaintiffs allege that Movants "concealed" certain information relevant to the alleged 42 U.S.C. § 1985(3) conspiracy, and that they've discovered the "contours" or "scope" of the alleged conspiracy due to the PSU study. (*E.g.*, Compl. at 2, 3, ¶¶ 47-49, 52, 61, 80 [contours].) Plaintiffs do not allege any conduct that Movants undertook to conceal such information beyond the claims for relief themselves, nor do Plaintiffs allege that they took any action to discover the allegedly concealed information, such as public records requests, or that any "new" or recently discovered or available documents were evaluated by FutureLab.

## III.   LEGAL STANDARDS

### A.   Fed. R. Civ. P. 12(b)(1).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss for lack of subject-matter jurisdiction. This includes a motion based on lack of standing. *Chandler v. State Far Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The party asserting subject-matter jurisdiction bears the burden of proving its existence. *Id.* The Court presumes lack of jurisdiction until plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[T]he jurisdictional question of standing precedes, and does not require, analysis of the merits." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Equity Lifestyle Properties, Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n.10 (9th Cir. 2008)).

### B.   Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal where a plaintiff fails to state

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

a claim upon which relief can be granted. Dismissal under that rule is proper where a plaintiff fails to allege a "cognizable" legal theory, or the complaint fails to allege sufficient facts to support a cognizable legal theory. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

Additionally, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And it is insufficient to plead facts that are "merely consistent with" liability. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## IV.   <u>ALL PLAINTIFFS LACK CONSTITUTIONAL OR PRUDENTIAL STANDING AS TO ALL CLAIMS</u>

Plaintiffs must demonstrate that they have standing to bring the claims they assert and obtain the remedies they seek. There are two types of standing: constitutional standing, as required by Article III, § 2 of the Federal Constitution, and prudential standing, which comprises principles that the federal courts have created over time. Failure to satisfy constitutional or prudential requirements defeats standing. *Fors v. Lehman*, 741 F.2d 1130, 1132 (9th Cir. 1984).

Plaintiffs cannot demonstrate either type of standing. They lack constitutional standing because they have not clearly demonstrated injury in fact, and their claims are not redressable through the non-monetary relief they seek. They lack prudential standing because they seek to recover for a generalized grievance.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

A.    **The Non-Resident Plaintiffs have not plausibly alleged constitutional standing to bring any of the asserted claims.**

1.    **To have Article III standing, a plaintiff must clearly allege injury in fact.**

Article III, § 2 of the Federal Constitution grants federal courts jurisdiction over "cases and controversies." That is, a plaintiff must demonstrate standing to bring the asserted claims and seek the requested remedies. To satisfy the standing requirement, a plaintiff must show that (1) they suffered an "injury in fact" that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Chandler*, 598 F.3d at 1122 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Gill v. Whitford*, 138 S. Ct. 1916, 1929 (2018).

At the pleadings stage, Plaintiffs must clearly allege facts demonstrating each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Plaintiffs must demonstrate standing for each claim they seek to press, including demonstrating standing "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (holding that a plaintiff must demonstrate standing not only for each claim, but also for each type of relief sought).

2.    **The Non-Resident Plaintiffs have not clearly alleged facts demonstrating that they suffered injury in fact as to any claim.**

To establish injury in fact, "a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo*, 578 U.S. at 339 (quoting in part *Lujan*, 504 U.S. at 560) (internal quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 561, n.1). For an injury to be "concrete" it must "actually exist." *Id.* at 340.

A plaintiff does not "establish a personal injury by merely identifying tort victims and

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

alleging a genealogical relationship." *Akins v. United States*, No. 21-CV-1824-BAS-WVG, 2021 WL 5203294, at *6 (S.D. Cal. Nov. 9, 2021). The Non-Resident Plaintiffs cannot overcome the requirement to clearly demonstrate particularized, concrete injury. The Non-Resident Plaintiffs do not allege that they lived in Central Albina when homes were condemned, that they owned property there during that period or after, or that they currently live near Central Albina. Rather, they seek damages related to a general loss of wealth in their families—wealth they postulate they could have inherited. (*See* Figure 1.) This is insufficient.

Further, there are no plausible allegations showing a meeting of the minds to deprive <u>non</u>-residents—the residents' siblings and extended family—of their Equal Protection rights. Indeed, the Non-Resident Plaintiffs do not claim that those rights were violated, but rather that they suffered damages because of what Movants allegedly did to their relatives who actually owned homes in Central Albina. Non-Resident Plaintiffs thus lack a particularized, concrete injury.

With respect to the unjust enrichment claim, the Non-Resident Plaintiffs do not allege that the City or Prosper Portland took property <u>of the Non-Resident Plaintiffs</u>, so there is no support for the Non-Resident Plaintiffs to recover restitution. (*See* Section VIII for further discussion of unjust enrichment elements.)

Finally, regarding the claims of private and public nuisance: assuming for the sake of argument that the Movants created private nuisances affecting certain properties, only people with a possessory interest in those properties could have suffered a particularized, concrete injury as a result of that nuisance. And assuming for the sake of argument that the existence of vacant land where the homes once stood could comprise a public nuisance, none of the Plaintiffs plausibly alleges that the vacant land affects them in any concrete way—or to a degree greater than the public at large, as is necessary for a public nuisance claim. (*See* Section VIII for further discussion of nuisance elements.)

By arguing that Non-Resident Plaintiffs' asserted injuries are neither particularized nor concrete, the City and Prosper Portland do not deny or minimize the community-wide effects of

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

the implementation of urban renewal laws in the 1960s and 1970s, which uprooted and disrupted the lives of Central Albina residents and their families. Rather, the City and Prosper Portland argue that the Non-Resident Plaintiffs' redress is through the executive or legislative branches, not the federal courts. Any effects they may have experienced are entirely derivative of their relatives and therefore do not support the injury-in-fact element of Article III standing.

**B.**    **Plaintiffs lack prudential standing to bring any claim because they assert a generalized grievance.**

The federal courts have developed prudential limitations on the exercise of federal jurisdiction that supplement those required by the Federal Constitution. These prudential limitations further the design of Article III because "the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99-100 (1979).

One such prudential limitation on standing is that the federal courts should "refrain[] from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches." *Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 475 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499-500, (1975)).

Plaintiffs seek recompense, and equitable relief, based on the destruction of a neighborhood and the displacement of its residents. (*See* Compl., p. 1 ["This case is about the intentional destruction of a thriving Black neighborhood in Central Albina under the pretense of facilitating a hospital expansion that never happened."]; Compl., ¶ 2.) Plaintiffs primarily base their claims of injury on their or their relatives having been thrust out of a community that met their needs and into more hostile neighborhoods of (very largely white) Portland. Plaintiffs are but several among approximately 100 homes between 1963 and 1969, and 158 homes between 1971 and 1973, in Central Albina that were taken as part of Emanuel's expansion. (Compl., ¶¶ 64, 75.) This is precisely the type of non-justiciable generalized grievance for which federal

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

courts are unsuited.

    **C.**    <u>**EDPA2 lacks organizational standing.**</u>

Organizations such as EDPA2 may sue only if they can establish organizational standing or associational standing. *Smith v. Pac. Properties and Dev. Corp.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982)). Organizational standing turns on whether an organization itself has suffered an injury in fact. *Smith*, 358 F.3d at 1101. Associational standing can exist where an organization acts as a representative of members who have been injured in fact, and thus could have sued in their own right. *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40 (1976).

EDPA2 appears to invoke organizational standing and not associational standing. EDPA2 alleges that "EDPA2 has suffered and continues to suffer diversion of resources and frustration of mission from defendants' historic and ongoing actions and inactions." (Compl., ¶ 4.) Under other circumstances, these allegations of frustration of mission and diversion of resources might satisfy Article III standing. For example, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), an organization called HOME, which provided "counseling and referral services for low- and moderate-income homeseekers," sufficiently pled Article III standing to sue under the Fair Housing Act by alleging that the government's discriminatory practices required it to divert resources "to identify and counteract the defendant's racially discriminatory steering practices." *Id.* That is, HOME had a mission separate and apart from the government's assertedly unlawful acts, and having to combat the government's discrimination assertedly interfered with that mission and HOME's resources in pursuing it.

In contrast here, EDPA2 cannot successfully allege organizational standing because it would not exist but for the City's and PDC's assertedly unlawful acts:

> The Emanuel Displaced Persons Association 2 (EDPA2) is an ad
> hoc community organization made up of survivors and descendants
> of those whose homes were taken and demolished in Central
> Albina and whose thriving and supportive community was

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

> fragmented by the never-fully-consummated Emanuel Hospital
> Urban Renewal Project. EDPA2's purpose and mission are to seek
> justice and restitution for survivors and descendants of families
> whose homes were taken and destroyed by defendants. EDPA2 has
> suffered and continues to suffer diversion of resources and
> frustration of mission from defendants' historic and ongoing
> actions and inactions.

(Compl., ¶ 4.) It is "an organization formed to help" "survivors and descendants of families whose homes were destroyed by defendants." (Compl., p. 2).

Because EDPA2's express mission is to address the City's and PDC's assertedly unlawful acts, EDPA2 cannot satisfy Article III standing. "[S]eek[ing] justice and restitution" does not cause the organization to divert resources that would be used for some other purpose; rather, asserting these claims is the sole purpose for which this ad hoc organization exists. Plaintiffs do not allege that there is some other mission that the allegedly wrongful acts have prevented the organization from fulfilling. EDPA2 therefore lacks standing and should be dismissed. As another Ninth Circuit district court recently noted:

> "Plaintiff may not establish injury by engaging in activities that it
> would normally pursue as part of its organizational mission . . .
> [a]s another court put it: "[i]f this Court were to allow a party
> whose organizational mission is to engage in policy advocacy to
> claim injury on the basis of a need to engage in that exact activity,
> *any* advocacy group could find standing to challenge laws when
> there are changes in policy." *Know Your IX v. DeVos*, No. CV
> RDB-20-01224, 2020 WL 6150935, at *6 (D. Md. Oct. 20, 2020).
> Therefore, Plaintiffs' allegations are not sufficient to establish that
> the 2020 Regulations frustrate its mission."

*Women's Student Union v. U.S. Dep't of Educ.*, No. 21-CV-01626-EMC, 2021 WL 3932000, at

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

*5 (N.D. Cal. Sept. 2, 2021) (emphasis in original).

**D.      The equitable relief Plaintiffs seek would not redress the injuries they assert.**

In addition to damages, Plaintiffs seek various forms of equitable relief: a declaration "that defendants have been unjustly enriched by their actions above and that unjust enrichment is continuing and will continue into the future unless enjoined" (Compl., ¶ 101), and a declaration that Movants have created an ongoing public nuisance in the form of a vacant lot where the Hill Block once stood (Compl., ¶ 102).

Neither form of relief would redress the asserted injuries. Declaratory judgments must be prospective, so the Court cannot declare that unjust enrichment or public nuisance happened in the past. Prospective relief fails because the Court cannot compel the return of property that no Plaintiff owned or the reconstruction of homes now demolished, nor require development of vacant land such as the Hill Block. This is especially so, given significant civic engagement around what to do with the Hill Block, including the City and Prosper Portland's formation of the Hill Block Project Working Group. (*See* Compl., ¶ 74, alleging working group and other community-led efforts to decide how the Hill Block should be redeveloped). Thus, to the extent any Plaintiff seeks equitable relief, non-redressability precludes standing.

**V.      THE CLAIMS ARE TIME-BARRED**

**A.      In order to be timely, Plaintiffs must rely on delayed accrual, or equitable tolling, of the statutes of limitation.**

A claim for 42 U.S.C. § 1985(3) conspiracy alleged in an Oregon forum is subject to a two-year statute of limitation. *Logan v. W. Coast Benson Hotel*, 981 F. Supp. 1301, 1316-17 (D. Or. 1997).[3] An unjust enrichment claim based on tortious conduct is also subject to a two-year statute of limitation. *Htaike v. Sein*, 269 Or. App. 284, 294-95 (2015), *rev. denied*, 357 Or. 595

---

[3] To determine the statute of limitation for a 42 U.S.C. § 1985 claim, the court looks to the most analogous tort under state law and its limitations period.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

(2015) (applying ORS 12.110(1) where gravamen of claim was deceit, among other things). The nuisance claim is subject to a six-year statute of limitations. ORS 12.080.

The statute of limitation begins to run—the claim accrues—when the plaintiff knows, or should know, of the injury that is the basis of the claim. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1058 (9th Cir. 2002). That is, the clock starts ticking when a plaintiff has knowledge of the "critical facts" of the injury, including "that he has been hurt and who has inflicted the injury." *Bibeau v. Pacific Nw. Research Found.*, 188 F.3d 1105, 1108 (9th Cir. 1999) (quoting *United States v. Kubrick*, 444 U.S. 111, 112 (1979)). Plaintiffs who were minors at the time were required to sue within the earlier of five years after injury, or one year after turning 18. ORS 12.160.

Another doctrine, equitable tolling, can pause the statute of limitations from running until the occurrence of another event. *Abillo-De Leon v. Gonzales*, 410 F.3d 1090, 1099 (9th Cir. 2005). Generally, tolling can apply where the plaintiff shows that despite "all due diligence," the plaintiff could not obtain vital information bearing on the existence of a claim. *Id.* at 1099-1100 (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir.1995)).

Because 42 U.S.C. § 1985(3) is a federal statute, federal claim <u>accrual</u> principles apply to claims under that statute, but federal courts "borrow" the <u>tolling</u> principles of the forum state. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

As described below, Plaintiffs do not plausibly allege a basis for delayed accrual or equitable tolling sufficient to make their claims timely.

**B.      <u>The allegations of the Complaint do not support delayed accrual of any claim.</u>**

**1.      The discovery rule does not apply, as the face of the Complaint demonstrates.**

The discovery rule affects when a claim accrues, which is when the statute of limitation begins to run. *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008). "[U]nder federal law, a claim accrues 'when the plaintiff knows or has reason to know of the

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

injury which is the basis of the action.'" *Id.* (quoting *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999)). Accordingly, accrual "is not the date on which the wrong that injures the plaintiff occurs, but the date—often the same, but sometimes later—on which the plaintiff discovers that he has been injured." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450 (7th Cir. 1990).

Plaintiffs appear to allege that their claims did not accrue until the PSU FutureLab completed its study of Central Albina and published its results. (Compl., ¶¶ 79, 80.) They allege that they did not discover the "contours of the [§ 1985(3)] conspiracy" until that study, (Compl., ¶¶ 80, 87), and that the facts discovered by the study previously were unknowable (Compl., ¶ 80). Plaintiffs do not allege any facts supporting these assertions.

Assuming for the moment that the foregoing allegations lay adequate foundation for delayed accrual under the discovery rule, other allegations make the discovery rule implausible. Plaintiffs repeatedly allege that personnel from Emanuel told their relatives that they needed to leave their homes lest the City take them. (*E.g.* Compl., ¶¶ 5, 8, 10, 11.) Moreover, the Complaint alleges that, at least 50 years ago, several of the Plaintiffs' relatives, possibly accompanied by the Plaintiffs themselves, gathered to discuss the City's, PDC's, and Emanuel's allegedly wrongful conduct: "Ms. Smith's family got together with other neighbors in the area (including the Bowles and Burns families) to discuss the matter, ***because they knew that defendants' efforts to take away their homes were wrongful and unfair***." (Compl., ¶ 13, emphasis added.) (*See also* Section II(D), above.)

Furthermore, EDPA hired counsel in or around 1970 to petition HUD to stop the condemnation of property until the community could provide input. (Compl., ¶¶ 60, 61.) That means community decision-makers knew that there was a legal issue relating to the condemnation that made hiring a lawyer advisable, and there was a lawyer available to provide advice on the lawfulness or unlawfulness of Movants' conduct (including the then-recent, alleged statements by Emanuel personnel that the City would seize property).

At best, the FutureLab study alerted Plaintiffs to a theory of recovery, rather than to an injury that they hadn't discovered yet. That is of no moment, because the asserted injury had

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

occurred decades before and community members, including some of the Plaintiffs' families, knew it: they discussed the alleged wrongful acts among themselves; they formed EDPA in order to address the way the City and PDC allegedly were treating them; they hired a lawyer; there have been visible empty lots where these homes once were in Central Albina for decades; families were displaced decades ago; and, all of this prompted EDPA2 to commission the FutureLab study at least four years prior to filing the Complaint. (RJN Ex. 1, p. 7.) As the Ninth Circuit noted in the context of an employment discrimination action, "a plaintiff's claim accrues when the plaintiff learns of the 'actual injury,' *i.e.*, an adverse employment action, and not when the plaintiff suspects a 'legal wrong,' *i.e.*, that the employer acted with a discriminatory intent." *Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (citing *Lukovsky*, 535 F.3d at 1049-51 (9th Cir. 2008); *see also Lukovsky*, 535 F.3d at 1051 ("In this case, as the district court found, the claim accrued when the plaintiffs received notice they would not be hired . . . . At this point, the plaintiffs knew they had been injured and by whom . . . even if at that point in time the plaintiffs did not know of the legal injury, i.e., that there was an allegedly discriminatory motive underlying the failure to hire.").

### 2.    No allegations support applying the continuing violation doctrine.

Plaintiffs repeatedly allege that the alleged § 1985(3) conspiracy, unjust enrichment, and nuisance are ongoing. This might be an attempt to invoke the continuing violations doctrine. "The continuing violations doctrine functions as an exception to the discovery rule of accrual 'allowing a plaintiff to seek relief for events outside of the limitations period.'" *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019) (quoting *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)). This doctrine "is actually a conglomeration of several different ideas, . . . the essence of which is that 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Id*. (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982) and *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)). It has two variants: "serial acts" and "systematic branch." The U.S. Supreme Court has severely limited the

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

"serial acts" variant of the doctrine, clarifying that "'discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges' because '[e]ach discrete act . . . starts a new clock for filing charges alleging that act.'" *Bird*, 935 F.3d at 747 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 107, 113 (2002)).

Under the "systematic branch" theory, a plaintiff can "recover for acts that occurred prior to the limitations period so long as (1) those acts were conducted pursuant to a policy or practice that remained in effect ***within the statute of limitations period*** and (2) the plaintiff remained subject or susceptible to the policy within the limitations period." *Id.* (emphasis added). But case law has also severely constrained that variant of the doctrine. Although the Ninth Circuit has "left room for the systematic branch to apply to class-wide pattern-or-practice claims," the court has "consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." *Id.* at 748 The court has thus commented that "little remains of the continuing violations doctrine." *Id.*

Nonetheless, Plaintiffs appear to rely on the doctrine. Given that the only recent events even tangentially related to the taking of homes in the 1960s and 1970s are Prosper Portland's asserting rights to the Hill Block site, which is owned by Emanuel, in 2017, and using tax-increment financing to borrow against future increases in property value within the Interstate urban renewal area (which contains part of the original urban renewal area created for the hospital expansion), Plaintiffs allege that the lack of redevelopment of the condemned land is part of systemic discrimination that ties back to discriminatory intent allegedly underlying the actions that took place five decades ago.

Plaintiffs cannot invoke the continuing violation doctrine simply by relying on alleged ongoing harm. Rather they must rely on continual unlawful <u>acts</u>. *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981) ("A continuing violation is occasioned by continual unlawful acts, not by continual ill effects from an original violation. Hence, continuing non-employment resulting from an original action is not a continuing violation.") (internal citation omitted). As the Supreme Court has noted, "current effects alone cannot breathe life into prior, unchanged

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

discrimination; as we held in [*United Airlines v. Evans*, 431 U.S. 558 (1977)], such effects in themselves have no present legal consequences." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007), *overturned on other grounds due to legislative action* Pub. L. No. 111-2 (Jan. 29, 2009) (internal quotations omitted).

The only ongoing act Plaintiffs allege as evidence of conspiracy is that Prosper Portland receives increased tax increment revenue by including the Hill Block property within the Interstate Corridor Urban Renewal Area (ICURA). (Compl., ¶¶ 66-67.) But Plaintiffs do not allege that any Plaintiff owned property in the Hill Block or that Plaintiffs' relatives' properties were within the ICURA. Regardless, this allegation does not plausibly support a conspiracy.

Plaintiffs also do not allege contemporary seizure of property from any Plaintiff that could support an unjust enrichment claim, and no current interference with the use of any Plaintiff's land in support of a nuisance claim. The continuing violation doctrine does not apply, and the claims are time-barred. *See Colquitt v. Mfrs. and Traders Trust Co.*, 144 F. Supp. 3d 1219, 1224-1228 (D. Or. 2015) (granting motion to dismiss discrimination in lending claim because not subject to continuing violation doctrine and therefore time-barred, notwithstanding monthly loan payments and several loan modifications that assertedly continued the initial discrimination); *Roark v. U.S.*, No. 6:12-CV-01354-AA, 2013 WL 1071778, at *4 (D. Or. Mar. 12, 2013) (denying motion to amend complaint to add *Bivens* claim because continuing violation doctrine did not apply to failure to return property taken during an allegedly unlawful investigation).

**C.**     <u>**Plaintiffs fail to plead concealment with particularity, or even plausibly, and therefore fail to plausibly allege equitable tolling.**</u>

Plaintiffs repeatedly allege that the City and Prosper Portland engaged in "concealment." (Compl., ¶¶ 47, 48, 49, 52, 61, 80, 87.) But Plaintiffs never specify what facts were concealed or how such concealment was accomplished. They simply do not allege that any defendant took steps to "lull[] the plaintiff, by affirmative inducement, into delaying the filing of a cause of action" or to "lull[] the plaintiff into believing he had no cause of action against the defendant,"

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon 97201
503.624.6800

as required to successfully invoke concealment. *Philpott v. A.H. Robbins Co., Inc.*, 710 F.2d 1422, 1425 (9th Cir. 1983) (applying Oregon law). Plaintiffs intimate that the alleged conspiracy itself is the source of the concealment, but that is insufficient; Plaintiffs must "point to . . . some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiffs [sic] claim is filed, to prevent the plaintiff from suing in time." *Torch v. Windsor Surry Co.,* No. 3:17-cv-00918-AA, 2019 WL 6709379, at \*4 (D. Or. Dec. 9, 2019) (quoting *Lukovsky*, 535 F.3d at 1052) (applying *Philpott* to claim under Oregon law) (emphasis in original).

Plaintiffs bear the burden of alleging facts that would give rise to tolling. *Hinton v. Pac. Enters.*, 5 F.3d 391, 395 (9th Cir. 1993). Plaintiffs must allege concealment with particularity— that is, they must meet the heightened pleading requirements of Fed. R. Civ. P. 9. *Id.*; *Conerly v. Westinghouse Elec. Corp.,* 623 F.2d 117, 120-21 (9th Cir. 1980) (noting that whether under California law or federal law, a plaintiff must plead "with particularity the facts which give rise to the claim of fraudulent concealment"; affirming 12(b)(6) dismissal on statute of limitations grounds). Through the absence of any particular facts showing concealment beyond the alleged conspiracy, Plaintiffs do not meet this standard, nor do they meet the lower standard of Fed. R. Civ. P. 8.

But even if the Court finds that Plaintiffs adequately allege concealment, Plaintiffs still have not adequately supported tolling. That is because Plaintiffs were required to allege that they exercised reasonable diligence in investigating potential claims, but that some wrongful conduct on Defendants' part prevented Plaintiffs from discovering their claims. *MAT, Inc. v. Am. Tower Asset Sub, LLC*, 312 Or. App. 7, 16 (2021); *accord Hinton*, 5 F.3d at 395. Plaintiffs allege no such facts, and the Complaint indicates to the contrary: EDPA engaged a lawyer in approximately 1970 to represent that organization and its constituents in relation to the Relocation Plan. (Compl., ¶ 60.) Plaintiffs' concealment argument fails because they fail to allege interference with their due diligence, affirmatively allege community suspicions in the 1960's regarding Movants' alleged wrongdoing (Compl., ¶ 13), and they fail to allege any reasons why they could not review public records available from this time period.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Moreover, even assuming that tolling applied initially, EDPA's engaging counsel in 1970 or 1971 ended that tolling and Plaintiffs should have sued shortly thereafter. *See Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997) ("[O]nce a claimant retains counsel, tolling ceases because she has gained the means of knowledge of her rights and can be charged with constructive knowledge of the law's requirements.") (internal quotations and citations omitted); *Pesek v. Gates*, 247 Fed. App'x 62, 64 (9th Cir. 2007) (same); *see also Taylor v. W. Or. Elec. Co-op., Inc.*, No. CV-03-01311-ST, 2005 WL 2709540, at *6 (D. Or. Oct. 21, 2005) (dismissing age discrimination claim as time-barred where plaintiff engaged counsel because "equitable tolling ceases to be appropriate once a plaintiff retains counsel"; collecting authorities).

Finally, the condemned land lay largely vacant for decades, as the photographs in the Complaint show.

* * * *

For all of the foregoing reasons, the applicable statutes of limitation expired long ago. Plaintiffs do not adequately allege any basis for delayed accrual of their claims or equitable tolling.

## VI.    PLAINTIFFS DO NOT ALLEGE A PLAUSIBLE SECTION 1985(3) CONSPIRACY

To prevail on their claim under 42 U.S.C. § 1985(3), Plaintiffs must plead and prove:

(1)    a conspiracy;
(2)    for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and
(3)    an act in furtherance of the conspiracy;
(4)    whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters and Joiners of Am., Loc. 610, AFL-CIO  v. Scott*, 463 U.S. 825, 828-29 (1983).

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Plaintiffs fail to state a plausible claim for § 1985(3) conspiracy. They make few non-conclusory factual assertions to support the alleged conspiracy:

- In the 1950s, City officials, private consultants, and Emanuel officials, discussed the creation of an urban renewal zone in Central Albina. (Compl., ¶ 45.)

- The only way to access federal moneys for urban renewal was to declare Central Albina "blighted." (Compl., ¶ 45.)

- The Portland Development Commission issued a report noting that Central Albina was blighted and recommended that Central Albina be part of an urban renewal zone. (Compl., ¶ 46.)

- In the 1960s through approximately 1970, Emanuel visited Central Albina families and threated that if they didn't move, the City would take their homes. (Compl., ¶¶ 5-12.)

- In 1970, the Portland Development Commission proposed awarding a tax credit of $835,584 to Emanuel for its "local share of the costs of the entire urban renewal project," an amount that Plaintiffs allege "represents Emanuel's costs in purchasing and demolishing about 100 homes in Central Albina between 1963 and 1969." (Compl., ¶ 57.)

Plaintiffs also make the following conclusory allegations, which the Court disregards (*Twombly*, 550 U.S. at 555):

- The shadows of a conspiracy are seen in the early reports regarding urban renewal in Central Albina. (Compl., ¶ 47.)

- The Portland Development Commission's "findings were a done deal" and a "critical step in furtherance of a conspiracy." (Compl., ¶ 48.)

- "Although it was concealed by defendants at the time, it is now being revealed that Emanuel, the City, and the PDC were acting in concert with the concealed preordained goal of demolishing the Black community in Central Albina, not

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

because of actual urban 'blight' but because they did not want Black people living and thriving in this economically valuable neighborhood." (Compl., ¶ 52.)

- "On information and belief, Emanuel would not have committed to a nearly million-dollar undertaking to acquire [100 homes in Central Albina between 1963 and 1969] before official approval of the urban renewal project unless there had been a preexisting conspiratorial agreement with the City and PDC for Emanuel to retrospectively be credited for its role in crippling the economically vibrant heart of Portland's Black community. Emanuel knew what the public and plaintiffs' families are only now learning: Not only would the City compensate Emanuel for the costs of displacement and demolition, but that the City would finish the job for them. Otherwise, Emanuel would never have expended so much time, effort, and money." (Compl., ¶ 57.)

- Emanuel would not have begun "taking these homes from people if they did not have the secret assurance of PDC and the City that the government would finish the job for them via eminent domain. Otherwise, this acquisition would have been for naught. Emanuel needed *all* of the land cleared in order to fulfill the common goal of removing Black people from its immediate proximity and expanding its facilities." (Compl., ¶ 65.)

Plaintiffs' <u>factual</u>, non-conclusory assertions fail to show that Defendants "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Pettibone v. Biden*, No. 3:20-cv-01464-YY, 2021 WL 6503761, at *8 (Sep. 13, 2021), *aff'd in relevant part*, 2021 WL 6112595 (2021) (Simon, J.), *rev'd on other grounds*, 59 F.4th 449 (9th Cir. 2023) (quoting *Gilbrook v. City of Westminster*, 177 F.3d 839, 856 (9th Cir. 1999) *as amended on denial of reh'g* (July 15, 1999) (dismissing § 1985(3) claim)). Plaintiffs' non-conclusory allegations do not show sufficient "events, conversations, or documents indicating an agreement or 'meeting of the minds' amongst the defendants to violate

Page 24 – CITY AND PROSPER'S MTD

[plaintiffs'] rights." *Id.* at *9 (cleaned up). General descriptions of coordination among the City, Portland Development Commission, and Emanuel, do "not meet the pleading standard under § 1985(3) that requires plaintiffs to 'allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Id.* (quoting *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 685 (8th Cir. 2012)).There are no "verbal or written communications" that suggest a unity of purpose, common design and understanding, or a meeting of the minds, to deprive Plaintiffs' of their equal protection rights. *Id.* Without such facts, the Court cannot "infer or extrapolate" an alleged conspiracy to violate Plaintiffs' equal protection rights. *Id.*

In the light most favorable to the Plaintiffs, Plaintiffs' factual, non-conclusory allegations of § 1985(3) conspiracy are "merely consistent with" liability, *Iqbal*, 556 U.S. at 678, but do not cross the plausibility threshold. The First Claim for Relief should be dismissed.

## VII.    THE COURT SHOULD DISMISS BOTH STATE LAW CLAIMS BASED ON DISCRETIONARY IMMUNITY

Plaintiffs' state common law claims are barred by discretionary immunity. Discretionary immunity is a creature of statute:

> Every public body and its officers, employees and agents acting
> within the scope of their employment or duties . . . are immune
> from liability for . . . [a]ny claim based upon the performance of or
> the failure to exercise or perform a discretionary function or duty,
> whether or not the discretion is abused.

ORS 30.265(6)(c). To be eligible for discretionary immunity, a decision must (1) be the result of a choice involving the exercise of judgment, (2) involve public policy rather than routine day-to-day decision-making of public officials, and (3) be exercised by a body or person that has the responsibility or authority to make it. *Verardo v. Or. Dep't of Transp.*, 319 Or. App. 442, 447 (2022) (affirming grant of summary judgment based on discretionary immunity).

The face of the Complaint demonstrates that ORS 30.265(6)(c) bars the state law claims.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

The urban renewal and relocation plan was approved by the City Council in the face of opposition—that is, the City made a policy choice concerning redevelopment of Central Albina. (Compl., ¶¶ 56, 57.) And those implementing that policy choice were acting pursuant to the City Council's enactment. *See Hooper v. N. Bend City/Coos-Curry Hous. Authorities*, 6:16-CV-00005-MC, 2017 WL 3038253, at *3 (D. Or. July 18, 2017) (holding that housing authority entitled to discretionary immunity when entering plaintiff's unit pursuant to power disconnection policy).

In fact, Plaintiffs themselves allege, as they must in order for their § 1985(3) claim to survive, that the acts "complained of were undertaken in the execution of customs, policies, and practices implemented or consented to by authorized policymakers" of the City and Prosper Portland/PDC. (Compl., ¶ 32-33.)

For the above reasons, the Court should dismiss the claims for unjust enrichment and nuisance because they are barred by discretionary immunity.

## VIII.    THE UNJUST ENRICHMENT CLAIM FAILS ON ITS MERITS

To allege a plausible claim for unjust enrichment, the claim must fall within "the established legal categories of unjust enrichment as reflected in Oregon case law and other authorities[.]" *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 132 (2017). One such "other authority" is the Restatement (3d) of Restitution. *See id.* at 124-132; *accord Cumming v. Nipping*, 285 Or. App. 233, 239 (2017).

Plaintiffs' unjust enrichment claim alleges that the City and Prosper Portland (1) took property under the guise of blight "when race was the real motivation for the seizure and demolition" (Compl., ¶ 91); (2) received increased tax revenues related to the condemned land (Compl., ¶ 90); and (3) "are receiving an ongoing reputational benefit for publicly declaring that they are 'returning land' to the 'Black community' and seeking to develop it with culturally specific developers and services." Plaintiffs also incorporate and cite the 88 prior paragraphs of their Complaint in support of the unjust enrichment claim, though they don't specify which

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

allegations matter to the unjust enrichment claim. (Compl., ¶ 89).

These allegations do not fall under a recognized category of unjust enrichment in Oregon or in the Restatement and are not plausible.[4] To the extent the claim is based on the City's or PDC's condemnation of land, there was no "unjust" taking because the process through which the land was taken entailed payment of just compensation. *See U.S. Miller*, 317 U.S. 369, 373 (1943) ("The Fifth Amendment of the Constitution provides that private property shall not be taken for public use without just compensation. Such compensation means the full and perfect equivalent in money of the property taken. The owner is to be put in as good position pecuniarily as he would have occupied if his property had not been taken.").

Plaintiffs' allegation that "race was the real motivation" for the condemnation does not make the condemnation process, in which landowners received just compensation, "unjust" in the sense of unjust enrichment. *Larisa's Home Care*, 362 Or. at 126-27 (collecting authorities for the premise that enrichment must be unjust in a legal sense rather than a moral sense). And to the extent Plaintiffs have been damaged by unlawful discrimination, those damages potentially are recoverable (if at all) through other claims.

With respect to Plaintiffs' allegations that Plaintiffs' relatives were coerced to leave their homes by Emanuel personnel who claimed the City would seize those relatives' homes: such claims do not satisfy *Iqbal/Twombly* for the reasons discussed above in Section VI.B.1.

For these additional reasons, the Court should dismiss the unjust enrichment claim.

## IX.    THE NUISANCE CLAIM FAILS ON THE MERITS

Plaintiffs allege two types of nuisance: private nuisance and public nuisance. To state a claim for private nuisance, Plaintiffs must allege an "unreasonable non-trespassory interference with another's private use and enjoyment of land," *Mark v. State ex rel. Dep't of Fish and Wildlife*, 191 Or. App. 563, 572-73 (2004) (quoting *Mark v. State Dep't of Fish & Wildlife*, 158

---

[4] The *Larisa's Home Care* court did not enumerate the recognized categories, though fraud appears to be one of them—as that is what *Larisa's Home Care* involved.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

Or. App. 355, 360 (1999)). Plaintiffs have not alleged facts supporting a plausible private nuisance claim. They allege (1) in the 1960s or 1970s, there were vacant lots and abandoned homes because of Movants' alleged campaign to pressure residents into moving, and (2) there currently is a vacant lot. Plaintiffs in no way explain how vacant lots and the presence of some abandoned homes rose to the level of an unreasonable interference with private use and enjoyment of land. This does not give rise to an inference that they will be able to present the required "clear and convincing" proof of a nuisance. *Jewett v. Deerhorn Enterprises, Inc.,* 281 Or. 469, 473 (1978).

With respect to the allegation of public nuisance, Plaintiffs in no way explain why the presence of a vacant lot invades any property right "common to all members of the public," nor allege that any of the Plaintiffs "suffered an injury distinct from the injury that the public as a whole suffered." *Mark v. State Dept. of Fish and Wildlife*, 158 Or. App. 355, 360 (1999).

Finally, because Plaintiffs do not allege that they owned or own any land that has been harmed, they do not state a plausible claim for either type of nuisance. *See id.* ("The right to recover is in the person whose land is harmed.") (collecting cases).

## X.    <u>CONCLUSION</u>

Because no plaintiff has standing to pursue the claims alleged in the Complaint, it should be dismissed. Even if there is standing, the applicable statutes of limitation expired long ago and no accrual or tolling doctrine renders Plaintiffs' claims timely. And even if the Court assesses the claims on their merits, it should find (1) Plaintiffs do not state a plausible § 1985(3) conspiracy to violate Plaintiffs' equal protection rights, (2) discretionary immunity bars the Second and Third Claims for Relief, and (3) the unjust enrichment and nuisance claims fails as a matter of law. Plaintiffs' remedies lie with the legislative and executive branches.

Snell & Wilmer
1455 SW Broadway, Suite 1750
Portland, Oregon  97201
503.624.6800

DATED this 27th day of February, 2023.

/s/ Clifford S. Davidson
J. Scott Moede, OSB No. 934816
Chief Deputy City Attorney
scott.moede@portlandoregon.gov
Elizabeth C. Woodard, OSB No. 075667
Deputy City Attorney
Beth.Woodard@portlandoregon.gov
PORTLAND CITY ATTORNEY'S OFFICE
1221 SW 4th Ave., Rm. 430
Portland, OR  97204
Telephone: (503) 823-4047
Facsimile: (503) 823-3089

Attorneys for defendant City of Portland

Clifford S. Davidson, OSB No. 125378
SNELL & WILMER L.L.P.

Attorneys for defendants City of Portland and
Prosper Portland

4859-0720-7507