Misha Isaak, OSB #086430
misha.isaak@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Phone 503-224-3380

Peter M. Ellis (*pro hac vice* forthcoming)
pellis@reedsmith.com
Rizwan A. Qureshi (*pro hac vice* forthcoming)
rqureshi@reedsmith.com
REED SMITH LLP
10 Sout Wacker Drive, Suite 4000
Chicago, IL 60606
Phone 312-207-1000

Attorneys for Defendant Legacy Emanuel Hospital and Health Center

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| EMANUEL DISPLACED PERSONS ASSOCIATION 2; GLORIA CAMPBELL-CASH; ISAAC CAMPBELL; IZEAL CAMPBELL; MARILYN K. HASAN; ROSIE TAYLOR; ELIZABETH FOUTHER-BRANCH; BOBBY FOUTHER; KAREN SMITH; ALICIA BYRD; BRIAN MORRIS; JOANNE BOWLES-SPIRES; CLAUDE BOWLES; MARY BOWLES SHOALS; ROYAL HARRIS; RAHSAAN MUHAMMAD; MIKE HEPBURN; BEVERLY HUNTER; JUANITA BIGGS; CONNIE MACK; TRAVANTE FRANKLIN; DONNA MARSHALL; BARBARA DUMAS; LAKEESHA DUMAS; JAMES SMITH SR.; CLIFFORD | Case No.: 3:22-cv-01896-SI<br><br>DEFENDANT LEGACY EMANUEL HOSPITAL AND HEALTH CENTER'S MOTION TO DISMISS<br><br>Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)<br><br>Oral Argument Requested |

DEFENDANT LEGACY EMANUEL HOSPITAL AND HEALTH CENTER'S
MOTION TO DISMISS

TYRONE DUMAS; and VALDA
MCCAULEY,

              Plaintiffs,

   v.

CITY OF PORTLAND; PROSPER
PORTLAND fka THE PORTLAND
DEVELOPMENT COMMISSION; AND
LEGACY EMANUEL HOSPITAL &
HEALTH CENTER,

              Defendants.

DEFENDANT LEGACY EMANUEL HOSPITAL AND HEALTH CENTER'S
MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

LOCAL RULE 7-1 CERTIFICATION ............................................................................. 1

MOTION ............................................................................................................................ 1

LEGAL MEMORANDUM ................................................................................................ 1

I. PRELIMINARY STATEMENT ..................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................. 3

III. LEGAL STANDARD ................................................................................................... 5

IV. ARGUMENT ................................................................................................................ 6

    A.    This Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Impermissibly Assert the Rights of Third Parties and Lack Standing. ................... 6

    B.    The Court Should Dismiss Plaintiffs' Claims Against the Hospital Because They Are Barred By the Applicable Statute of Limitations ..................... 8

        1.    Plaintiffs Filed Their Section 1985 "Conspiracy" Claim (Count I) Long After the Two Year Statute of Limitations Expired .......................... 8

            a.    Plaintiffs Have Failed to Plead Delayed Discovery ....................... 9

            b.    Plaintiffs Fail to Plead Any Continuing Wrongs During the Limitations Period ...................................................................... 12

        2.    Plaintiffs Filed Their Unjust Enrichment Claim (Count II) Long After the Two-Year Statute of Limitations Expired ............................... 14

        3.    Plaintiffs Filed Their Nuisance Claim (Count III) Long After the Six-Year Statute of Limitations Expired ................................................ 16

    C.    Plaintiffs Do Not State a Claim Because All Causes of Action Fail to Plead Essential Elements .................................................................................. 17

        1.    Plaintiffs' Section 1985 Claim Fails to State a Claim ............................. 17

            a.    Plaintiffs' Section 1985(3) Claim Fails Because They Have Not Pled State Action Nor a Cognizable Section 1983 Claim ............. 18

            b.    Plaintiffs Have Not Pled the Existence of a Conspiracy Between the Defendants ............................................................................ 19

            c.    Plaintiffs Have Not Pled an Invidious, Discriminatory Purpose .. 22

            d.    Plaintiffs Have Not Pled an Overt Act by the Hospital ............... 25

2.      Plaintiffs' Unjust Enrichment Claim Fails to Plead a Benefit
        Conferred on the Hospital ........................................................................ 26

3.      Plaintiffs Fail to Allege Essential Elements of Their Nuisance
        Claim ........................................................................................................ 29

        a.      Plaintiffs Fail To State a Claim For Private Nuisance ................. 29
        b.      Plaintiffs Fail To State A Claim For Public Nuisance ................. 30

V. CONCLUSION ........................................................................................................ 33

LOCAL RULE 7-2. 26 CERTIFICATION ................................................................. 34

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*In re African-American Slave Descendants Litigation*,
304 F.Supp.2d 1027 (N.D. Ill. 2004) ...................................................................7

*Arnold v. International Business Machines Corp.*,
637 F.2d 1350 (9th Cir. 1981) ..........................................................................25

*Atl. Nat'l Tr., LLC v. Gunderson*,
132 F. Supp. 1284 (D. Or. 2000) ......................................................................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................5, 20

*Bepple v. Shelton*,
2016 U.S. Dist. LEXIS 18778 (D. Or. Feb. 17, 2016).........................................17

*Bergin*,
2007 U.S. Dist. LEXIS 60353 .....................................................................12, 13

*Bowden v. Davis*,
205 Or. 421, 289 P.2d 1100 (1955) ..............................................................30, 31

*Boyce v. Freeman*,
2002 WY 20, 39 P.3d 1062 (Wyo. 2002) ...........................................................28

*Bray v. Alexandria Women's Health Clinic*,
506 U.S. 263 (1993).........................................................................18, 22, 23, 24

*Bruns v. NCUA*,
122 F.3d 1251 (9th Cir. 1997) ..........................................................................24

*Caldeira v. County of Kauai*,
866 F.2d 1175 (9th Cir. 1989) ..........................................................................19

*Carter v. City & County of San Francisco*,
No. C 94-4246 FMS, 1996 U.S. Dist. LEXIS 8970 (N.D. Cal. June 19, 1996) .....................13

*Center for Legal Studies, Inc. v. Lindley*,
64 F. Supp. 2d 970 (D. Or. 1999) .....................................................................22

*Chapman v. Asbury Auto. Grp. Inc.*,
No. 3:15-cv-679, 2017 U.S. Dist. LEXIS 122937 (E.D. Va. Aug. 3, 2017) .........................27

*City of Gary v. Shafer*,
No. 2:07-CV-56-PRC, 2007 U.S. Dist. LEXIS 75503 (N.D. Ind. Oct. 4, 2007).....................32

*Cole v. Sunnyside Marketplace, LLC*,
212 Or. App. 509, 160 P.3d 1 (2007)......................................................................................9

*Couch v. Cate*,
379 F. App'x 560 (9th Cir. May 14, 2010)............................................................................22

*Dauven v. U.S. Bancorp*,
No. 3:13-cv-844-AC, 2014 U.S. Dist. LEXIS 89493 (D. Or. Mar. 19, 2014),
*adopted as modified by* 2014 U.S. Dist. LEXIS 88590 (D. Or. June 30, 2014) .....................12

*Davis v. Wells Fargo Bank, N.A.*,
No. 3:13-CV-1759-N, 2014 U.S. Dist. LEXIS 206200 (N.D. Tex. Sep. 23,
2014) .........................................................................................................................................28

*Deirmenjian v. Deutsche Bank*,
No. CV 06-00774 MMM, 2010 U.S. Dist. LEXIS 150665 (C.D. Cal. May 13, 2010).........6, 7

*Dost v. Nw. Tr. Servs.*,
No. 3:11-cv-00270-ST, 2011 U.S. Dist. LEXIS 150517 (D. Or. Dec. 21, 2011)...................26

*Drayton v. City of Lincoln City*,
244 Or. App. 144, 260 P.3d 642 (2011)..................................................................................29

*Drayton v. City of Lincoln City*,
244 Ore. App. At 148, 260 P.3d at 645 (2011) .......................................................................30

*Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*,
No. 3:13-cv-01883-PK, 2016 U.S. Dist. LEXIS 51494 (D. Or. Feb. 25, 2016)..........14, 15, 27

*Fitzhenry v. Portland Police Bureau*,
No. 3:22-cv-00222-HZ, 2022 U.S. Dist. LEXIS 156040 (D. Or. Aug. 25, 2022)....................5

*Galaz v. U.S.*,
175 F. App'x 831 (9th Cir. 2006)............................................................................................29

*Gale v. Saif Corp.*,
No. 3:18-cv-00707-AC, 2019 U.S. Dist. LEXIS 81153 (D. Or. Mar. 15, 2019)...................8, 9

*Gilbrook v. City of Westminster*,
177 F.3d 839 (9th Cir. 1999) ..................................................................................................19

*GMAC Relocation Servs. v. Herring*,
No. CV 06-887-MO, 2006 U.S. Dist. LEXIS 87195 (D. Or. Nov. 30, 2006) ........................27

*Graham v. Henderson*,
  89 F.3d 75 (2d Cir. 1996)........................................................................................23

*Greene v. Legacy Emanuel Hospital*,
  335 Or. 115, 60 P.3d 535 (2002) ..........................................................................14

*Griffin v. Breckenridge*,
  403 U.S. 88 (1971)............................................................................................18, 22

*Gronn v. Rogers Constr., Inc.*,
  221 Or. 226, 350 P.2d 1086 (1960) .......................................................................29

*Hall v. State*,
  326 P.3d 1165 (2014)..............................................................................................30

*Hoffman v. IndyMac Bank FSB*,
  No. C-10-0802 MMC, 2010 U.S. Dist. LEXIS 90080 (N.D. Cal. Aug. 31, 2010)...........18, 19

*Htaike v. Sein*,
  269 Or. App. 284, 4 P.3d 527 (2015)...............................................................14, 15

*Hummasti v. Ali*,
  No. 06-CV-1710-BR, 2009 U.S. Dist. LEXIS 25433 (D. Or. Mar. 20, 2009) .......................20

*Iqbal*, 556 U.S. at 678 ...............................................................................................5

*James v. Village of Willowbrook*,
  No. 11-cv-9126, 2012 U.S. Dist. LEXIS 102191 (N.D. Ill. July 19, 2012) ...........................13

*Johnson v. Manders*,
  127 Ore. App. 147, 872 P.2d 420 (1994)................................................................7

*Jones v. Bock*,
  549 U.S. 199 (2007)..................................................................................................8

*Josten v. Rite Aid Corp.*,
  No. 18-cv-0152-AJB-JLB, 2018 U.S. Dist. LEXIS 198124 (S.D. Cal. Nov. 20, 2018) .........16

*Karim-Panahi v. Los Angeles Police Dept.*,
  839 F.2d 621 (9th Cir. 1988) ...............................................................................26

*Kimes v. Stone*,
  84 F.3d 1121 (9th Cir. 1996) ...................................................................................9

*Kunik v. Racine Cty.*,
  946 F.2d 1574 (7th Cir. 1991) ...............................................................................21

*Kush v. Rutledge*,
    460 U.S. 719 (1983)..................................................................................................17

*Larisa's Home Care, Ltd. Liab. Co. v. Nichols-Shields*,
    362 Or. 115, 404 P.3d 912 (2017) ........................................................................26

*Las Vegas Dev. Grp. v. 2014-3 Ih Equity Owner*,
    No. 2:15-cv-00917-GMN-NJK, 2020 U.S. Dist. LEXIS 222424 (D. Nev. Nov. 25, 2020)....15

*Logan v. West Coast Benson Hotel*,
    981 F. Supp. 1301 (D. Or. 1997) ............................................................................8

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982)..................................................................................................18

*Lukovsky v. City & County of San Francisco*,
    535 F.3d 1044 (9th Cir. 2008) ................................................................................9

*Mark v. Dept. of Fish and Wildlife*,
    158 Or. App. 355, 974 P.2d 716 (1999)................................................................29

*McDougal v. County of Imperial*,
    942 F.2d 668 (9th Cir. 1991) ..................................................................................8

*Mendocino Envtl. Ctr. v. Mendocino Cty.*,
    192 F.3d 1283 (9th Cir. 1999) ..............................................................................21

*Miesegaes v. Allenby*,
    No. 21-55113, 2022 U.S. App. LEXIS 30901 (9th Cir. Nov. 8, 2022) ..................17

*Moran v. Fannie Mae*,
    No. 2:12-cv-212, 2012 U.S. Dist. LEXIS 99189 (E.D. Va. July 17, 2012)............32

*Nelson v. City of McGehee*,
    876 F.2d 56 (8th Cir. 1989) ..................................................................................21

*NLRB*,
    596 F.2d ..................................................................................................................10

*Olsen v. Idaho State Bd. of Med.*,
    363 F.3d 916 (9th Cir. 2004) ................................................................................20

*Personnel Administrator of Mass. v. Feeney*,
    442 U.S. 256 (1979)................................................................................................23

*Pettibone v. Biden*,
No. 3:20-cv-01464-YY, 2021 U.S. Dist. LEXIS 246535 (D. Or. Sep. 13, 2021),
*rev'd on other grounds* by 2023 U.S. App. LEXIS 2649 (9th Cir. Feb. 2, 2023) .......19, 20, 21

*Phila. Elec. Co. v. Hercules, Inc.*,
762 F.2d 303 (3d Cir. 1985)...................................................................................................32

*Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*,
522 F.3d 1049 (9th Cir. 2008) ...............................................................................................15

*Rivera v. Capmark Fin., Inc.*,
No. 1:12-CV-1097-CAP, 2013 U.S. Dist. LEXIS 207999 (N.D. Ga. Feb. 27, 2013).............32

*State ex rel. Rudd v. Ringold*,
102 Or. 401, 202 P. 734 (1921) .............................................................................................31

*San Diego Puppy, Inc. v. City of San Diego*,
2014 U.S. Dist. LEXIS 128237 (S.D. Cal. Sep. 11, 2014) ...............................................19, 23

*Sanchez v. City of Santa Ana*,
936 F.2d 1027 (9th Cir. 1990) ...........................................................................................25, 26

*Sanders v. JD Home Rentals*,
No. 1:22-cv-00251-ADA-SKO, 2022 U.S. Dist. LEXIS 213563 (E.D. Cal.
Nov. 22, 2022) ......................................................................................................................18

*Seib v. Metro. Life Ins. Co.*,
No. 3:19-cv-00892-AC, 2021 U.S. Dist. LEXIS 112476 (D. Or. Apr. 7, 2021) ....................28

*Senter v. JPMorgan Chase Bank, N.A.*,
810 F. Supp. 2d 1339 (S.D. Fla. 2011) ..................................................................................28

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) ...........................................................................................22, 23

*Smejkal*,
274 Or. at 574 .......................................................................................................................29

*Smith v. Monitor Mgmt.*,
No. 27 21 86, 1991 Conn. Super. LEXIS 140 (Super. Ct. Jan. 9, 1991) .................................32

*Sohn v. California Housing Financing Agency*,
No. 20-cv-03780-VKD, 2020 U.S. Dist. LEXIS 243954 (N.D. Cal. Dec. 29, 2020) .............17

*Sons v. McManis,*
    No. CIV F 08 - 0840 AWI TAG, 2010 U.S. Dist. LEXIS 105438 (E.D. Cal.
    Oct. 1, 2010) ..................................................................................................16

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) .........................................................................5

*Stephens v. Multnomah County,*
    No. 3:11-cv-01497-MO, 2012 U.S. Dist. LEXIS 47606 (D. Or. Apr. 3, 2012) .....................20

*Suarez v. Hunter,*
    No. 91-35667, 1993 U.S. App. LEXIS 2006 (9th Cir. Jan. 29, 1993)....................................21

*Tavtigian-Coburn v. All Star Custom Homes, Ltd. Liability Co.,*
    266 Ore. App. 220, 337 P.3d 925 (2014)..............................................................16

*Townley v. Miller,*
    722 F.3d 1128 (9th Cir. 2013) ..........................................................................6

*United Bhd, of Carpenters & Joiners v. Scott,*
    463 U.S. 825 (1983)........................................................................................17, 18

*Waterhouse v. Cufi Church Ass'n,*
    2014 U.S. Dist. LEXIS 88179 (D. Haw. June 27, 2014) .....................................17

*Watson v. County of Santa Clara,*
    No. C-06-04029 RMW, 2009 U.S. Dist. LEXIS 29842 (N.D. Cal. Mar. 23, 2009)...............11

*Wilson v. Household Fin. Corp.,*
    2013 U.S. Dist. LEXIS 46126, 2013 WL 1310589 (E.D. Cal. Mar. 28, 2013) .....................12

*Winters v. County of Clatsop,*
    210 Or. App. 417, 150 P.3d 1104 (2007)..............................................................26

**Statutes**

26 U.S.C. § 501(c)(3)......................................................................................27

O.R.S. § 12.080(3) ........................................................................................16

O.R.S. § 12.110 ............................................................................................14, 15

O.R.S. § 12.110(1) ........................................................................................8

O.R.S. § 114.255-114.435 ..............................................................................7

O.R.S. § 115......................................................................................................7

**Other Authorities**

About Legacy, LEGACY HEALTH (last visited Jan. 25, 2023),
    https://www.legacyhealth.org/About.aspx ......................................................................27

39 Am Jur 285, Nuisances, § 8 ....................................................................................30

Community Benefit & Engagement, LEGACY HEALTH (last visited Feb. 26, 2023),
    https://www.legacyhealth.org/Giving-and-Support/community-
    engagement/CB-About-Us ..........................................................................................24

Exemption Requirements - 501(c)(3) Organizations, INTERNAL REVENUE SERVICE
    (last visited Jan. 25, 2023), https://www.irs.gov/charities-non-
    profits/charitable-organizations/exemption-requirements-501c3-organizations; ...................27

Nonprofit, Tax-Exempt, Co-ops, HOAs, and Political Organizations, OREGON
    DEPARTMENT OF REVENUE (last visited Jan. 25, 2023),
    https://www.oregon.gov/dor/programs/businesses/Pages/corp-nonprofit.aspx ......................27

## LOCAL RULE 7-1 CERTIFICATION

Pursuant to Local Rule 7-1(a), counsel for Defendant Legacy Emanuel Hospital & Health Center certifies that on February 23, 2023, the parties conferred in good faith via telephone conference regarding each basis for this motion, but were unable to resolve their dispute. Accordingly, the motion is opposed.

## MOTION

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendant Legacy Emanuel Hospital & Health Center (the "Hospital" or "Legacy") moves to dismiss Plaintiffs'[1] Complaint (the "Complaint"), dated December 8, 2022, with prejudice, because Plaintiffs lack standing and the Complaint fails to state a claim on which relief may be granted.

## LEGAL MEMORANDUM

### I. PRELIMINARY STATEMENT

Beginning in the 1950s, the United States passed federal legislation and provided grants to local authorities to redevelop "blighted" urban areas. As part of this drive for "urban renewal," the City of Portland (the "**City**") and Prosper Portland, then known as the Portland Development Commission (the "**Commission**") condemned, purchased, and demolished properties in Central Albina, a predominately African-American community, to make way for redevelopment projects. The decision had meaningful consequences for countless families that became displaced in the 1960s and 1970s.

---

[1] The term "Plaintiffs" throughout this brief shall collectively refer to the following: Emanuel Displaced Persons Association 2; Gloria Campbell-Cash; Isaac Campbell; Izeal Campbell; Marilyn K. Hasan; Rosie Taylor; Elizabeth Fouther-Branch; Bobby Fouther; Karen Smith; Alicia Byrd; Brian Morris; Joanne Bowles-Spires; Claude Bowles; Mary Bowles Shoals; Royal Harris; Rahsaan Muhammad; Mike Hepburn; Beverly Hunter; Juanita Biggs; Connie Mack; Travante Franklin; Donna Marshall; Barbara Dumas; Lakeesha Dumas; James Smith Sr.; Clifford Tyrone Dumas; and Valda McCauley.

The Hospital, which has been a pillar of the Central Albina community for over a century, has recognized the harm the residents of Central Albina suffered. To that end, the Hospital has committed to righting the wrongs the community experienced, including by donating 1.7 acres of Hospital property.

Plaintiffs are the alleged descendants of several former property owners (the "**Homeowners**") in Central Albina and an ad hoc community organization made up of the Homeowners (the "**Association**"). They allege that the Hospital conspired with the City and the Commission to force the African-American Homeowners out of Central Albina in violation of their constitutional due process and equal protection rights (Count I). They also allege that the Hospital was unjustly enriched (Count II) and created a private and public nuisance (Count III) because of the alleged conspiracy. Even assuming, for purposes of this Motion, that the facts alleged in the Complaint are true, the Complaint fails to state a claim against the Hospital and, as a result, should be dismissed.

*First*, Plaintiffs lack standing. Article III of the United States Constitution requires that plaintiffs assert their own rights and injuries, not those of third parties. Plaintiffs' claims, however, are premised on alleged wrongs committed against the Homeowners, not themselves, and the claims are brought without establishing that Plaintiffs are legal personal representatives who stand in their relatives' shoes and can validly assert their rights. Plaintiffs thus lack standing and, as a result, this Court lacks subject-matter jurisdiction over Plaintiffs' claims against the Hospital.

*Second*, the applicable statutes of limitations bar Plaintiffs' claims against the Hospital. The claims against the Hospital are predicated on events and actions that took place decades ago—well outside the applicable limitations periods. Plaintiffs also fail to plead facts that

support any exception that could extend the limitations period. Plaintiffs' claims are thus time-barred and should be dismissed.

***Third***, even if Plaintiffs had standing and filed a timely Complaint – which they did not – Plaintiffs' claims must still be dismissed because Plaintiffs failed to plead the required elements of each claim. Plaintiffs' claim under 42 U.S.C. § 1985 ("**Section 1985**") fails because Plaintiffs have failed to plead: (1) sufficient state involvement; (2) the existence of a conspiracy; (3) motivation by racial animus; and (4) cognizable overt acts in furtherance of the conspiracy by the Hospital. As to Plaintiffs' state-law claim for unjust enrichment, Plaintiffs fail to plead a valid "benefit" conferred on the Hospital, twice over: as a tax-exempt entity, the Hospital could not have received the tax benefits alleged, and such benefits could not have been conferred by Plaintiffs as the law requires. Finally, Plaintiffs' nuisance claims fail to articulate a valid private or public nuisance. For these reasons and the reasons discussed below, Plaintiffs' claims should be dismissed.

## II. STATEMENT OF FACTS

The following facts, which are drawn from the Complaint and other public sources the Court may take judicial notice of, are assumed true for purposes of this motion only:

The individual Plaintiffs are the alleged descendants of Central Albina Homeowners whose properties were allegedly taken and demolished. Compl. ¶¶ 4-30. The Association is an *ad hoc* community organization made up of the individual descendants of the Homeowners. *Id*. ¶ 4. According to the Complaint, the Homeowners were displaced from Central Albina between 1950 and 1973. *Id*. ¶¶ 4-30. The displacement, according to Plaintiffs, occurred in two phases, the first phase occurring from the late 1950s to the late 1960s ("**Phase One**") and the second phase occurring from the late 1960s until 1973 ("**Phase Two**").

**Phase One**. Plaintiffs allege that in the late 1950s, the Defendants began meeting to discuss the creation of an urban renewal zone in Central Albina to facilitate the Hospital's expansion and modernization. *Id*. ¶ 67. In 1962, the Commission prepared a report finding that Central Albina was "blighted" and recommended urban renewal. *Id*. at ¶ 46. During this period, Plaintiffs allege that Defendants "took Plaintiffs' property unjustly" for nominal amounts through force, pressure, legal intervention, and "intimidation and threats from [the Hospital]." *Id*. ¶¶ 5, 8-11, 13, 19, 22, 89. As a step in that process, in early 1967, Legacy's Emanuel Hospital Urban Renewal Plan was approved by the Commission. *Id*. ¶ 52. Also during this time, the City was securing federal funding through the Model Cities Program. *Id*. ¶ 53.

**Phase Two**. Plaintiffs allege that during Phase Two, the City and the Commission took the remaining homes and businesses in Central Albina under the guise of urban renewal and eminent domain. *Id*. ¶¶ 3, 13-29. During this period, from the late 1960s until 1973, Defendants allegedly continued to "publicly engag[e] in the false narrative that Central Albina was 'blighted' . . . and taking the remaining homes and businesses in the community via an unlawful use of urban renewal and eminent domain." *Id*. ¶ 3. Plaintiffs maintain that the Hospital would have never taken the acts it took in Phases One and Two unless there had been a preexisting conspiratorial agreement amongst the Defendants. *Id*. ¶¶ 65, 67.

In 1980, the Hospital purchased the vacant lot located at N. Williams and N. Russell from PDC (the "Hill Block"). *Id*. ¶ 67. After possessing the property for a period, the Hospital began making plans to return the property to the community. This effort started with the Hospital joining the Williams & Russell Project Working Group (PWG) along with Black business owners, nonprofit leaders, the City and Prosper Portland. *Id*. ¶ 74. In 2020, the Hill Block was appraised and added to the Interstate Corridor Urban Renewal Area ("ICURA") plan. *Id*. ¶ 76.

Plans to develop the lot have since been announced, with the Hospital contributing the land for community development at no cost. *Id*.

On December 8, 2022, Plaintiffs filed this lawsuit against the Hospital, Prosper Portland and the City, asserting claims under 42 U.S.C. § 1985 as well as Oregon state law. *Id*. ¶¶ 82-97. Plaintiffs allege Defendants "acted in concert to destroy a predominately Black community and displace hundreds of families from their homes and businesses in Central Albina." *Id*. ¶ 1. The Hospital strongly disputes these claims, and moves to dismiss the Complaint in its entirety.

### III. LEGAL STANDARD

A motion to dismiss for lack of subject matter jurisdiction falls under Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction bears the burden of proving that the court has subject matter jurisdiction over his claims." *Fitzhenry v. Portland Police Bureau*, No. 3:22-cv-00222-HZ, 2022 U.S. Dist. LEXIS 156040, at * 2–3 (D. Or. Aug. 25, 2022). In evaluating such a motion, "the court may consider evidence outside the pleadings to resolve factual disputes." *Id*. Moreover, "[a] challenge to standing is appropriately raised under Rule 12(b)(1)." *Id*. at *3.

Similarly, the Court may dismiss a Complaint under Fed. R. Civ. P. 12(b)(6) if it fails "to state a claim upon which relief can be granted." To avoid dismissal of the Complaint, Plaintiffs must plead "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In evaluating the Complaint, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court should thus dismiss a Complaint if it contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" or if it "tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

As discussed below, the Court lacks subject-matter jurisdiction and the Complaint fails to state a claim against the Hospital; for these reasons, the Complaint should be dismissed.

## IV. ARGUMENT

### A. This Court Lacks Subject-Matter Jurisdiction Because Plaintiffs Impermissibly Assert the Rights of Third Parties and Lack Standing.

Plaintiffs' claims should be dismissed in their entirety for lack of subject-matter jurisdiction under Article III because Plaintiffs lack standing to bring their claims. To have standing, Plaintiffs *themselves* must have suffered a redressable injury. Here, however, Plaintiffs bring claims based on harms suffered by third parties. *See, e.g.,* Compl. ¶ 5 ("In 1963, under intimidation and threats from [the Hospital], the Campbells were forced to sell their interest in the property . . ."). Nor have Plaintiffs established that they are proper, legal personal representatives of the Homeowners who *were* allegedly injured by the Defendants' conduct. Accordingly, dismissal is required.

"Standing focuses on whether a plaintiff has a 'personal stake' in the action such that she will be an effective litigant to assert the legal challenge at issue." *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013); *Deirmenjian v. Deutsche Bank*, No. CV 06-00774 MMM (RCx), 2010 U.S. Dist. LEXIS 150665 at *20 (C.D. Cal. May 13, 2010) ("To establish Article III standing, a plaintiff's complaint must establish that he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him.") (internal citations omitted). Critically, "'[t]he mere fact that one is related to a person who has suffered an injury in fact is insufficient to confer standing to sue.'" *Deirmenjian*, 2010 U.S. Dist. LEXIS 150665 at *20.

Here, Plaintiffs lack Article III standing because the Complaint alleges the Homeowners — and not Plaintiffs — were coerced to sell their homes in violation of their constitutional rights. *See, e.g.,* Compl. ¶¶ 5-30. Although Plaintiffs are alleged relatives of the Homeowners

and the Association is composed of descendants of the Homeowners, Plaintiffs do not allege that they had an ownership interest in the properties that were allegedly bought and sold in violation of the Homeowners' Constitutional rights. *See, e.g., id*. ¶ 10 ("Plaintiff Valda McCauley is the granddaughter of Amanda Warren, who owned the home located at 106 N. Graham."); ¶ 20 (Plaintiff Rahsaan Muhammad's "great-aunt and great-uncle, Alberdia and General Skipper, owned the home at 3103 N. Vancouver"). As such, Plaintiffs' claims are improperly based on harms suffered by others, the Homeowners.

Notably, under Oregon law, the only appropriate party to bring action on behalf of or against the interests of a decedent or an estate is a duly appointed personal representative. *See Johnson v. Manders*, 127 Or. App. 147, 150 872 P.2d 420 (1994) (citing ORS 114.255 to ORS 114.435; ORS chapter 115); *see also Deirmenjian*, 2010 U.S. Dist. LEXIS 150665 at *21 (citing California law for the proposition that "[o]nly descendants who are the legal successors in interest [] have standing to sue"). Plaintiffs, however, have not established that they are the Homeowners' personal representatives. Therefore, Plaintiffs lack standing to bring their claims. *See, e.g., id*. (holding that a class of descendants of victims of the Armenian genocide lacked standing to bring claims against Deutsche Bank); *In re African-American Slave Descendants Litigation*, 304 F.Supp.2d 1027, 1047 (N.D. Ill. 2004) ("Plaintiffs cannot establish a personal injury by merely identifying tort victims and alleging a genealogical relationship.").

Because Plaintiffs impermissibly seek to assert the rights of the Homeowners, they lack standing, and this Court in turn lacks jurisdiction under Article III to adjudicate their claims. For these reasons, dismissal is required.

**B.**  **The Court Should Dismiss Plaintiffs' Claims Against the Hospital Because They Are Barred By the Applicable Statute of Limitations**

Plaintiffs must file their claims within the statute of limitations period. Courts regularly dismiss claims at the pleading stage when the Complaint shows that the claims were filed after the expiration of the statute of limitations. *See e.g. Jones v. Bock*, 549 U.S. 199, 215 (2007) (recognizing dismissal is appropriate under Rule 12(b)(6) where the allegations show that relief is barred by the applicable statute of limitations). The Court should dismiss the claims against the Hospital because, based on the allegations in the Complaint, Plaintiffs assert claims against the Hospital long after the applicable statute of limitations expired.

**1.**  **Plaintiffs Filed Their Section 1985 "Conspiracy" Claim (Count I) Long After the Two Year Statute of Limitations Expired**

Claims brought under Section 1985 are subject to the same statute of limitations applicable to personal injuries brought under state law. *Logan v. West Coast Benson Hotel*, 981 F. Supp. 1301, 1316–17 (D. Or. 1997) (citing *McDougal v. County of Imperial*, 942 F.2d 668, 673–74 (9th Cir. 1991)). In Oregon, the statute of limitations for personal injuries is two years. ORS 12.110(1). Plaintiffs therefore were required to bring their Section 1985 claim against the Hospital within two years after their claim accrued. *Logan*, 981 F. Supp. at 1317. That claim accrued when Plaintiffs knew or should have known of the injury that is the basis of their claim. *Gale v. Saif Corp.*, No. 3:18-cv-00707-AC, 2019 U.S. Dist. LEXIS 81153 at *26 (D. Or. Mar. 15, 2019).

As set out above, Plaintiffs allege that the Hospital conspired with the City and the Commission to deprive them of constitutional rights over the course of two phases. Compl. ¶ 4-30. Phase One allegedly occurred from the 1950s to the late 1960s, while Phase Two allegedly occurred from the late 1960s until 1973. Because any of the Hospital's conduct and the resulting injury to the Homeowners must have occurred between the 1950s and 1973, the limitations

period expired approximately **50 years** ago. As a result, Plaintiffs' claims against the Hospital are time barred and should be dismissed. *Gale*, 2019 U.S. Dist. LEXIS 81153 at *26.

> a. **Plaintiffs Have Failed to Plead Delayed Discovery**

Plaintiffs allege that "[i]t was not until earlier this year that [they] learned that, as part of the conspiracy to deprive plaintiffs of their civil rights, the City had secretly agreed to compensate [the Hospital] for the full cost of the Phase One purchases and demolitions." Compl. ¶ 3. Moreover, they assert that "[t]he FutureLab[2] study has begun to reveal the scope of a conspiracy that could not have been uncovered . . . at an earlier date." *Id*. ¶ 80. These conclusory allegations are belied by allegations in the Complaint, which show that the Homeowners knew of the alleged conspiratorial acts as they took place, and Plaintiffs were aware of these acts decades ago. As a result, assuming the truth of the allegations in the Complaint, Plaintiffs' own allegations defeat the claim that "[t]he contours of the conspiracy have only in recent months begun to be uncovered." *Id*. ¶ 87.

Under the federal discovery rule, as under Oregon's,[3] "a claim accrues when the plaintiff knows, or should know, of the injury on which the cause of action is based." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). Accrual begins "upon awareness of the actual injury . . . and not when the plaintiff suspects a legal wrong." *Lukovsky v. City & County of San Francisco*, 535 F.3d 1044 (9th Cir. 2008). All presumptions are drawn against a party seeking to rely on this

---

[2] On February 14, 2022, Portland State University's School of Urban Community Development issued a study (the "FutureLab study"), which allegedly used "historical property identification files from the project area, archival photographs, stories from EDPA2 members, and other sources, [to] develop[] an interactive StoryMap illustrating the neighborhood that had been demolished for the . . . renewal project." Compl. ¶ 79.

[3] Oregon law recognizes the discovery rule for actions falling under ORS 12.110(1). *Cole v. Sunnyside Marketplace, LLC*, 212 Or. App. 509, 516–517, 160 P.3d 1 (2007) (recognizing that the Oregon Supreme Court has "repeatedly reaffirmed the application of a discovery rule to cases subject to ORS 12.110(1)").

doctrine, "since [their] claim to exemption is against the current state of the law and is founded on exceptions." *NLRB*, 596 F.2d at 383 n.2.

The Complaint's own allegations establish that the basis of Plaintiffs' claims could have been, and was, discovered much earlier than the last two years. For example, when detailing the alleged property acquisitions during the 1960s and 1970s, Plaintiffs repeatedly allege that the Hospital representatives told the Homeowners that if they did not vacate, the City would use its powers of eminent domain to take their homes. (*See e.g.,* Compl. ¶ 5 ("years before the City's involvement became public, [the Hospital] representatives had told the Campbells that the City was going to take the property if they did not leave immediately . . . ."); *see also, e.g., id.* ¶ 8 ("[The Hospital's] representatives had told [the Davis family] . . . that the family had 60 days to 'get out' of their home or that it would be taken from them by [The Hospital], the Lutheran Charity Board, and the City."); *id.* ¶ 10 ("In the mid-1960s, [The Hospital] staff pressured [Amanda Warren] to leave under the threat that the City was going to take the home if she refused to do so voluntarily."); *id.* ¶ 11 ("[I]n late 1962 or 1963, [the Hospital] representatives told Mrs. Williams that she would have to leave her home because all homes in the area were going to be torn down for the hospital's expansion.")).

These allegations, taken as true for purposes of this motion, illustrate that as far back as 1950, Defendants were openly conspiring with each other to deprive the Homeowners of their properties. As Plaintiffs tell it, everyone at the time was aware who the actors were, what their goals were, and how they were doing this. Indeed, Plaintiffs concede that "***the shadows of a conspiracy*** between [the Hospital], the City, and [the Commission] can be clearly seen in these early reports."  Compl. ¶ 47. These alleged acts, individually or taken together, would surely give

"a reasonable person [] cause to suspect that he or she has a claim." *Watson v. County of Santa Clara*, No. C-06-04029 RMW, 2009 U.S. Dist. LEXIS 29842, at * 5 (N.D. Cal. Mar. 23, 2009).

In addition, many of the Plaintiffs and the Homeowners were aware of, if not directly involved in, several meetings between the Hospital, the City, and Prosper as far back as 1970. (*See, e.g.,* Compl. ¶ 54 (detailing a meeting between CPB, the Commission, and the Hospital's board over the Model Cities program, after which the parties "reached an agreement that the CPB would be kept informed of and involved in the project as it moved forward . . ."); *see also, e.g. id.*, ¶ 60 ("EDPA retained legal representation and submitted a brief to HUD in November 1970, challenging the Commission's relocation plan for failing to comply with statutory relocation requirements.")). At least one Homeowner challenged the alleged improper seizure of their home in court. *See id.* ¶ 19 ("The battle to keep their home was long and drawn out . . . [but] [u]ltimately, the Marshall's home was acquired by court judgment."). Typically, a plaintiff who suffers an injury, and knows that they have suffered an injury, has all the facts they need to investigate further and bring a claim. So even though Plaintiffs need not know every fact they will eventually use to prove their claim, they have certainly known of their injury for a long time. Accordingly, any recent discoveries do not cause claims that accrued decades ago to accrue again.

The Complaint reveals that the Homeowners and Plaintiffs[4] were aware of the development effort undertaken in the area since the 1950s. While they may allege these efforts violated their constitutional rights, they cannot now claim they are only now learning of the

---

[4] Assuming the Plaintiffs have established that they are proper personal representatives of the Homeowners, under the standing doctrine the Plaintiffs step into the shoes of the Homeowners and thus it is the Homeowners knowledge of the claims which is relevant for the Court's analysis. Notwithstanding that fact, as alleged it is clear that both the Homeowners and the Plaintiffs knew or should have known of the injury on which their claims are based.

alleged infringing actions. Moreover, had they exercised reasonable diligence, Plaintiffs could have brought their claims sooner. *See Wilson v. Household Fin. Corp.*, 2013 U.S. Dist. LEXIS 46126, 2013 WL 1310589, at *4 (E.D. Cal. Mar. 28, 2013) ("To rely on a claim of delayed discovery, a plaintiff must allege facts showing that the basis of the claim could not have been discovered earlier, even in the exercise of reasonable diligence . . . ."). For these reasons, Plaintiffs have failed to plead a delayed discovery and thus their claims against the Hospital should be dismissed.

### b.  Plaintiffs Fail to Plead Any Continuing Wrongs During the Limitations Period

Plaintiffs allege that their injuries are "continuing." *See, e.g. id.* ¶ 2 ("economic strangulation that continues to this day[]"); *see also, e.g., id.* ¶ 4 ("EDPA2 has suffered and continues to suffer diversion of resources and frustration of mission"); *id.* ¶ 5 ("Ms. Campbell-Cash continues to be harmed by Defendants' actions and inactions"). To the extent Plaintiffs seek to rely on these allegations of a "continuing injury" to bring their claims within the limitations period, they cannot do so.

For statute of limitations purposes, the focus is on "the time of the discriminatory acts, not [] the time at which the consequences of the acts became most painful." *Dauven v. U.S. Bancorp*, No. 3:13-cv-844-AC, 2014 U.S. Dist. LEXIS 89493, at *28 (D. Or. Mar. 19, 2014), *adopted as modified by* 2014 U.S. Dist. LEXIS 88590 (D. Or. June 30, 2014) (internal quotations omitted); *Bergin*, 2007 U.S. Dist. LEXIS 60353 at *6 ("The existence of a conspiracy does not generally postpone accrual of causes of action arising from the conspirators' separate wrongs."). Thus, the allegation that the Plaintiffs are continuing to suffer the consequences of wrongs against the Homeowners that were, according to the Plaintiffs, committed outside the limitations period, is insufficient to render the Complaint timely. *See Dauven*, 2014 U.S. Dist. LEXIS 89493 at *28

("The continuing violation theory is inapplicable here because they fail to allege either a pattern or practice of discrimination or a new violation . . . within the limitations period.").

As previously detailed, Plaintiffs cannot rely on the discovery rule to make actionable acts which took place outside the statutory period. Even still, there are no acts that took place within the limitations period (the past two years) which could support any claim for damages against the Hospital. In fact, only one "act" is alleged to have occurred during the limitations period, and it would not constitute an "unlawful act" or "separate wrong" sufficient to support Plaintiffs' claim. The appraisal and addition of the Hill Block to the ICURA in 2020 was, at most, an "affirmation" following the lawful acquisition of the property.[5] *See Bergin*, 2007 U.S. Dist. LEXIS 60353 at *5 ("The alleged later effort to affirm that act does not bring the act within the limitations period.").

In sum, the Section 1985 violations alleged in Plaintiffs' Complaint occurred more than 50 years ago and involve multiple individuals (related and not), multiple entities (active and not) and multiple governments (local, state, national). There exist "no continued unlawful acts" nor is there a "reasonable relation" between the acts on either side of the statutory period which would allow Plaintiffs to allege a continuing violation. And, because the lone act that occurred during the statutory period cannot be a continued unlawful act, Plaintiffs have not alleged an actionable continuing violation and thus their claims against the Hospital should be dismissed.

---

[5] Even if this alleged act violated Plaintiffs' constitutional rights, which it did not, it would still be insufficient to extend the limitations period for the Hospital's alleged conspiracy between the 1950s and 1972. *See Carter v. City & County of San Francisco*, No. C 94-4246 FMS, 1996 U.S. Dist. LEXIS 8970, *14 (N.D. Cal. June 19, 1996) (noting that the continuing violation doctrine is inappropriate where there is a "lack of circumstantial evidence and a time gap between . . . incidents")*; see also James v. Village of Willowbrook*, No. 11-cv-9126, 2012 U.S. Dist. LEXIS 102191, *18 (N.D. Ill. July 19, 2012) (holding that "a significant gap of time between acts can preclude the operation of the continuing violation doctrine").

## 2. Plaintiffs Filed Their Unjust Enrichment Claim (Count II) Long After the Two-Year Statute of Limitations Expired

Plaintiffs' unjust enrichment claim is also time-barred. Under Oregon law, a two-year statute of limitations applies to unjust enrichment claims grounded in tort. *See* ORS 12.110; *see also Farmers Ins. Exch. v. First Choice Chiropractic & Rehab.*, No. 3:13-cv-01883-PK, 2016 U.S. Dist. LEXIS 51494, at *113 (D. Or. Feb. 25, 2016) (dismissing unjust enrichment claim as time-barred under Section 12.110). As with the Section 1985 limitations period, Oregon's two-year limitations period begins to run from the earlier of two possible events: "(1) the date of the plaintiff's *actual discovery* of injury; or (2) the date when a person exercising reasonable care *should have discovered* the injury, including learning facts that an inquiry would have disclosed." *Greene v. Legacy Emanuel Hospital*, 335 Or. 115, 123, 60 P.3d 535 (2002) (emphasis in original). The discovery rule is examined under an objective person standard. *Htaike v. Sein*, 269 Or. App. 284, 296, 4 P.3d 527, 534 (2015). Plaintiffs allege that Defendants "were unjustly enriched at Plaintiffs' expenses" because they "took Plaintiffs' property unjustly" for nominal amounts through force, pressure, legal intervention, and "intimidation and threats from Emanuel." *See, e.g.*, Compl. ¶¶ 5, 8-11, 13, 19, 22, 89-91.

Plaintiffs' own allegations make clear that both the Plaintiffs and the Homeowners knew of their alleged injury, or reasonably should have discovered the injury, at the time the Hospital acquired the land, which began in 1963 and ended in 1980. *Id*. ¶¶ 11, 67. For example, the Hospital's alleged purchase of land for far below market value (*id*. ¶ 5) and outward threats that the City would take the land if Plaintiffs did not leave (*id*. ¶¶ 8, 10–11, 22) would have alerted a reasonable person to the Hospital's alleged unjust conduct. *See Htaike*, 269 Or. App. at 298 (finding plaintiffs' delay in bringing suit reasonable due to conduct not present here: "concerted

effort by defendants to conceal Sein's tortious conduct and to obfuscate the harm through coercion and duplicitous behavior").

Moreover, Plaintiffs' allegations establish that facts which would have led to the discovery of the allegedly tortious conduct were not hidden and the harm was known. *See Platt Elec. Supply, Inc. v. EOFF Elec., Inc.*, 522 F.3d 1049, 1056 (9th Cir. 2008) (finding the statute of limitations on plaintiff's claim was not tolled under the discovery rule where plaintiff failed to allege that defendant concealed facts of its alleged conduct); *Htaike*, 269 Or. App. at 298. Both the purchase price and the alleged forceful behavior on the part of the Hospital were known to the Homeowners at the time the Hospital acquired each of the properties at issue. In fact, the Homeowners were directly involved in the transactions that resulted in the acquisitions in question. At bottom, the Complaint demonstrates that the Hospital did not prevent or delay Plaintiffs' discovery of its conduct. Had the Homeowners or Plaintiffs exercised reasonable diligence, they could have brought their claims sooner.

Therefore, Plaintiffs' claim began accruing as early as 1963 and as late as 1980. Even interpreting the facts in a manner most favorable to Plaintiffs by using 1980 as the most recent year that Plaintiffs knew or should have known of the facts giving rise to their claim, 1982 was the last year that Plaintiffs could have timely brought a claim for unjust enrichment. *See* ORS 12.110. Despite being aware of these facts since at least 1980, Plaintiffs waited over 40 years to bring their claim. Therefore, Plaintiffs' unjust enrichment claim is time-barred.[6] *See Farmers Ins. Exch.*, 2016 U.S. Dist. LEXIS 51494, at *113.

---

[6] As discussed above, Plaintiffs are not entitled to tolling of the statute of limitations because their allegations clearly establish that they have been aware of Defendants' conduct for generations or since as far back as the 1960s when the Hospital first acquired one of the properties at issue. (*See* Compl. ¶ 11); *see also Las Vegas Dev. Grp. v. 2014-3 Ih Equity Owner*, No. 2:15-cv-00917-GMN-NJK, 2020 U.S. Dist. LEXIS 222424, at *14 (D. Nev. Nov. 25, 2020)

### 3. Plaintiffs Filed Their Nuisance Claim (Count III) Long After the Six-Year Statute of Limitations Expired

In Oregon, the statute of limitations period for bringing a nuisance action is six years. *See* ORS 12.080(3). A nuisance claim accrues when a plaintiff knew or reasonably should have known of the elements of those claims. *Tavtigian-Coburn v. All Star Custom Homes, Ltd. Liability Co.*, 266 Or. App. 220, 222, 337 P.3d 925, 926 (2014).

Plaintiffs specifically allege that Defendants created a private nuisance "in the form of abandoned land in Central Albina." Compl. ¶ 95. Plaintiffs further allege that the Hospital's alleged taking of the land at issue occurred as early as the 1960s. *See generally id*. After decades passed without many of the purchased parcels of land having been developed, Plaintiffs had a reasonable opportunity to discover the facts underlying their nuisance claim against Defendants. In fact, in 1980 Plaintiffs had knowledge that much of the land in Central Albina was undeveloped when the Hospital publicly "announc[ed] its abandonment of the expansion project." *Id*. ¶ 67. The Hospital's public departure from the expansion project formalized the decision to not develop the land purchased in Central Albina and, in turn, leave it undeveloped. Therefore, 1980 is the most recent year that Plaintiffs knew or reasonably should have known of the facts underlying their nuisance claim. As a result, Plaintiffs' claim for private nuisance accrued, at the absolute latest, in 1980.

---

(dismissing unjust enrichment claim where party was aware of the facts giving rise to the claim since as early as February 2013 but did not file their claim until May 15, 2019); *Sons v. McManis*, No. CIV F 08 - 0840 AWI TAG, 2010 U.S. Dist. LEXIS 105438, at *13 (E.D. Cal. Oct. 1, 2010) (same); *Josten v. Rite Aid Corp.*, No. 18-cv-0152-AJB-JLB, 2018 U.S. Dist. LEXIS 198124, at *17-19 (S.D. Cal. Nov. 20, 2018) (rejecting plaintiff's tolling argument on unjust enrichment claims because he failed to allege how he only recently uncovered the defendant's scheme and why he could not have brought his claims earlier through reasonable diligence). Therefore, Plaintiffs do not (and cannot) claim any inability to have made an earlier discovery that would allow them to bring their unjust enrichment claim now.

Under Oregon's applicable six-year statute of limitations, Plaintiffs were required to bring their private nuisance claim by no later than 1986. Because Plaintiffs waited 42 years—well beyond the six-year limitations period—Plaintiffs' claim against the Hospital for private nuisance is time-barred. Accordingly, Plaintiffs' private nuisance claim should be dismissed.

## C. Plaintiffs Do Not State a Claim Because All Causes of Action Fail to Plead Essential Elements

Plaintiffs' claims are subject to dismissal if Plaintiffs fail to allege non-conclusory facts satisfying each and every element of their legal theories. *See*, *e.g.*, *Miesegaes v. Allenby*, No. 21-55113, 2022 U.S. App. LEXIS 30901, at *2 (9th Cir. Nov. 8, 2022). Here, the face of the Complaint shows that Plaintiffs have failed to allege required elements of their claims against the Hospital, and thus those causes of action should be dismissed for failure to state a valid claim.

### 1. Plaintiffs' Section 1985 Claim Fails to State a Claim

A claim under the "deprivation clause" [7] of Section 1985(3) requires a plaintiff to allege: (1) a conspiracy; (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws;" (3) an overt act in furtherance of the conspiracy; and (4) injury to a plaintiff's person, property, or protected rights. *United Bhd, of*

---

[7] As a threshold matter, the Complaint refers generally to Section 1985 but does not expressly label its theory of liability against Legacy, although Section 1985 embraces five distinct types of conspiracy claims. *Bepple v. Shelton*, 2016 U.S. Dist. LEXIS 18778, at *19 (D. Or. Feb. 17, 2016) (citing *Kush v. Rutledge*, 460 U.S. 719, 724 (1983)). However, the only sensible reading of the Complaint's allegations is an attempt to state a claim under the first clause of Section 1985(3). Legacy will address Plaintiffs' claims accordingly. This approach is consistently taken by Courts in the Ninth Circuit. *See e.g. Waterhouse v. Cufi Church Ass'n*, 2014 U.S. Dist. LEXIS 88179, at *6 (D. Haw. June 27, 2014) ("Although unclear, Waterhouse's first claim appears to allege a violation of his First Amendment rights under the deprivation clause of 42 U.S.C. § 1985(3)"); *see also e.g. Sohn v. California Housing Financing Agency*, No. 20-cv-03780-VKD, 2020 U.S. Dist. LEXIS 243954 (N.D. Cal. Dec. 29, 2020) ("Ms. Sohn's amended complaint does not specify which subsection(s) she asserts here. However, based on the allegations of her amended complaint, it seems that Ms. Sohn may be asserting a claim under § 1985(2) and § 1985(3).").

*Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983). Similarly, a cause of action under Section 1985(3) generally requires state action, although the statute can reach conspiracies under color of state law and purely private conspiracies. *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993). As explained below, Plaintiffs here have failed to plead necessary elements of their claim, requiring dismissal.

> ### a. Plaintiffs' Section 1985(3) Claim Fails Because They Have Not Pled State Action Nor a Cognizable Section 1983 Claim

A cause of action under Section 1985(3) may require state action. *Scott*, 463 U.S. 831; *see Griffin v. Breckenridge*, 403 U.S. 88, 98 (1971) (recognizing that state action in the context of Section 1985(3) can include "action under color of state law" or "interference with or influence upon state authorities"). While Section 1985(3) reaches both conspiracies under color of state law and purely private conspiracies, *Bray*, 506 U.S. at 268, "where a [Section] 1985(3) claim is based on the alleged deprivation of a federal right that requires state action, the claim cannot be based on a conspiracy among private parties." *Hoffman v. IndyMac Bank FSB*, No. C-10-0802 MMC, 2010 U.S. Dist. LEXIS 90080, at *9–10 (N.D. Cal. Aug. 31, 2010). A claim that a plaintiff was deprived of property without due process is such a claim. *Id*. (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982)).

Here, Plaintiffs allege that "Defendants conspired to deprive plaintiffs of their property and due process rights[.]" Compl. ¶ 83. As such, Plaintiffs must allege state action and cannot maintain their Section 1985(3) claim by alleging a solely private conspiracy. Despite this, Plaintiffs' allegations of purported "state action" all fall outside the applicable statute of limitations and/or are merely cursory, unsupported allegations. *See supra* II(A) and *infra* III(A)(1). Without sufficiently alleging state action, Plaintiffs cannot sustain a Section 1985(3) violation. *See Sanders v. JD Home Rentals*, No. 1:22-cv-00251-ADA-SKO, 2022 U.S. Dist.

LEXIS 213563, *11–12 (E.D. Cal. Nov. 22, 2022) (holding that because "Plaintiff has failed to allege [] Defendants actions are fairly attributable to the state [] consequently, he may not pursue a Section 1985 conspiracy claim"); *Hoffman*, 2010 U.S. Dist. LEXIS 90080, at *9–10 ("[P]laintiff has failed to allege state action, and, consequently, plaintiff may not pursue a § 1985(3) claim against defendants.").

Additionally, assertion of a claim under Section 1985(3) based on a violation of constitutional rights requires, as a prerequisite, a corollary Section 1983 claim. The fact that Plaintiffs are not pursuing a Section 1983 claim against the City does more than "raise[] serious doubts about the viability of their § 1985 claim." *San Diego Puppy, Inc.*, 2014 U.S. Dist. LEXIS 128237, at *25. "[T]he absence of a section 1983 deprivation of rights *precludes* a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (emphasis added). Because Plaintiffs have not pursued a Section 1983 claim, as none exists, they are precluded from asserting a Section 1985(3) claim here.

> **b.** **Plaintiffs Have Not Pled the Existence of a Conspiracy Between the Defendants**

Plaintiffs' claim fails to allege the most basic requirement of a conspiracy to violate civil rights under Section 1985(3): the existence of the conspiracy itself. "The *principal element* in alleging a civil conspiracy is an agreement between the parties to inflict a wrong against or injury upon another." *Pettibone v. Biden*, No. 3:20-cv-01464-YY, 2021 U.S. Dist. LEXIS 246535, *27 (D. Or. Sep. 13, 2021), *rev'd on other grounds* by 2023 U.S. App. LEXIS 2649 (9th Cir. Feb. 2, 2023) (internal citations omitted) (emphasis added).

To sufficiently plead a conspiracy, Plaintiffs must allege facts to establish that the Hospital and the other Defendants "reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Gilbrook v. City of*

*Westminster*, 177 F.3d 839, 856 (9th Cir. 1999). The existence of the conspiracy between the Defendants must be pleaded with particularity, alleging specific supporting facts. *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004); *Hummasti v. Ali*, No. 06-CV-1710-BR, 2009 U.S. Dist. LEXIS 25433, at * 23 (D. Or. Mar. 20, 2009). Mere "conclusory allegations of an agreement" between the defendants will not avoid dismissal. *Pettibone*, 2021 U.S. Dist. LEXIS 246535 at *28 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Here, Plaintiffs only offer the type of "conclusory allegations of agreement" that fail to sufficiently allege a claim. Plaintiffs merely repeat that there *must* have been an agreement, without alleging with particularity the facts supporting such an agreement. For example, Plaintiffs insist that the Hospital would not have taken the steps it allegedly took, if not for secret assurances from the City. *See*, *e.g.*, Compl. ¶ 57 ("[the Hospital] would not have committed to a [] million-dollar undertaking to acquire those properties . . . unless there had been a preexisting conspiratorial agreement with the City and [the Commission] for [the Hospital] to retrospectively be credited . . ."); ¶ 65 ("[the Hospital] would never have begun taking these homes . . . if they did not have the secret assurance of [the Commission] and the City that the government would finish the job [] via eminent domain."); *see also* ¶¶ 48, 80. This is an argument from silence: Plaintiffs can only claim that there *must* have been a secret agreement because they cannot allege any specific facts indicating that such an agreement exists. Controlling law holds that this is not enough. Unsupported hypotheticals and conclusory labels do not allege a meeting of the minds with particularity. *See Stephens v. Multnomah County*, No. 3:11-cv-01497-MO, 2012 U.S. Dist. LEXIS 47606, at *6 (D. Or. Apr. 3, 2012) (dismissing plaintiff's Section 1985(3) because "[h]er pleadings contain nothing more than conclusory allegations of a conspiracy which do not suffice under Rule 12(b)(6)").

The inference of a conspiracy from the defendants' actions, if such acts are most plausibly explained by the existence of a conspiracy, does not save Plaintiffs' deficient claim. The actions attributed to the Hospital are not of a type "unlikely to have been undertaken without" an unlawful agreement between the Hospital and other Defendants. *Mendocino Envtl. Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting *Kunik v. Racine Cty.*, 946 F.2d 1574, 1580 (7th Cir. 1991)). On the contrary: the Hospital's actions are easily explained by lawful motivations, independent of any agreement with the City. As detailed further below, the Hospital's motivation for its alleged actions was largely centered on the expansion of its services and campus. *See infra* at III(A)(3). These actions were not conspiratorial; they were consistent with the Hospital's mission to provide increased access to healthcare in the community.

Plaintiffs cannot recast lawful actions, easily explained by non-conspiratorial motives, as actionable merely by reciting that those actions must be evidence of a secret conspiracy. *See Suarez v. Hunter*, No. 91-35667, 1993 U.S. App. LEXIS 2006, *3 (9th Cir. Jan. 29, 1993) ("The ability and opportunity to conspire . . . is insufficient to prove the existence of a conspiracy."). Even the favorable inferences drawn when considering a motion to dismiss do not excuse Plaintiffs from the obligation to "point to at least some facts which would suggest that Defendants reached an understanding to violate their rights." *Pettibone*, 2021 U.S. Dist. LEXIS 246535, at *31 (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)). Plaintiffs have not done so here.

Moreover, even if Plaintiffs had validly pled an agreement of *some* kind between the Hospital and other Defendants (they do not), an actionable conspiracy further requires a sufficient level of knowledge among the conspirators, which Plaintiffs have also failed to plead. At minimum, the Section 1985(3) conspirators must have known of and shared the conspiracy's

"common objective." *Couch v. Cate*, 379 F. App'x 560, 564 (9th Cir. May 14, 2010). This Court

has stated that the alleged conspirators must be aware of the "nature and scope" of the unlawful

agreement. *Center for Legal Studies, Inc. v. Lindley*, 64 F. Supp. 2d 970, 979 (D. Or. 1999).

Even if the Complaint had plausibly alleged the existence of a conspiracy to which the Hospital

was a party—and it has not—there are no allegations which could support the additional

requirement that the Hospital knew of the purpose, nature, and scope of the agreement.

Since Plaintiffs have failed to allege the existence of an actionable conspiracy under

Section 1985(3), the first and most essential element of the claim, the Section 1985 claim should

be dismissed.

### c.     Plaintiffs Have Not Pled an Invidious, Discriminatory Purpose

Plaintiffs have also failed to allege facts that could support discriminatory animus by the

Hospital as the motivation of a Section 1985(3) conspiracy; indeed, the Complaint alleges just

the opposite: that the Hospital had economic motivations. Plaintiffs must identify a legally

protected right, and a deprivation of that right motivated by discriminatory animus, either racial

or aimed at some other cognizable class. *See Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536

(9th Cir. 1992).[8]  Here, Plaintiffs failed to allege claims supporting their theory that the Hospital

acted out of racial animus. In fact, Plaintiffs instead allege a non-actionable economic motive.

An invidious, discriminatory motive is central to a cause of action under Section 1985(3).

*Griffin*, 403 U.S. at 102. The required discriminatory intent involves "more than intent as

volition[,] or intent as awareness of consequences. It implies that the decisionmaker . . . selected

or reaffirmed a particular course of action at least in part because of, not merely in spite of, its

adverse effects upon an identifiable group." *Bray*, 506 U.S. at 271–272 (1993) (quoting

---

[8] For purposes of this motion, the Hospital does not dispute that Plaintiffs' claim is premised on their race, as Black Americans, rather than some other class.

*Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (cleaned up)). A race-based Section 1985(3) claim, such as the one Plaintiffs attempt to bring, "demands" that the defendant have targeted the plaintiffs *by reason of their race. See id.* at 263. Moreover, economic discrimination, or adverse actions against the plaintiffs taken out of an economic or profit motive, are not within the scope of Section 1985(3) and cannot support a valid claim. *Sever*, 978 F.2d at 1538 (rejecting Section 1985 claim where plaintiff alleged defendant conspired against it, because plaintiff had damaged defendant's "economic prospects"); *San Diego Puppy, Inc. v. City of San Diego*, 2014 U.S. Dist. LEXIS 128237, at *24 (S.D. Cal. Sep. 11, 2014) (quoting *Graham v. Henderson*, 89 F.3d 75, 82 (2d Cir. 1996)).

*First*, Plaintiffs have effectively pleaded themselves out of Court by alleging that the Hospital's motivation was economic, not racial, which cannot support a claim under Section 1985(3). The Complaint repeatedly alleges that the Hospital's alleged actions were driven by a desire to grow and expand its campus and services. *See*, *e.g.*, Compl. ¶ 45 ("In the late 1950s, discussions began between City representatives, private urban renewal consultants, and Emanuel about the creation of an urban renewal zone in Central Albina, to facilitate the hospital's expansion and modernization."); *id.* ("Emanuel officially notified the City of its interest in preparing a development plan for its campus expansion using the urban renewal program in 1962."); ¶ 67 ("[The Commission"] required Emanuel to begin the redevelopment of the Property by the construction of the improvements thereon within a reasonable period of time and, in any event, the development of the Property for hospital and other related uses shall be completed by January 1, 1990.").

The Hospital's desire for "expansion and modernization" does not constitute discriminatory bias at all, much less the racial animus that a claim like Plaintiffs' requires.

Indeed, precedent establishes that such economic interests *cannot* support a Section 1985(3) claim. *See Bruns v. NCUA*, 122 F.3d 1251, 1255-56 (9th Cir. 1997).

*Second*, even if Plaintiffs have not closed the courthouse door themselves by highlighting the Hospital's economic self-interest in expansion, Plaintiffs have not alleged any facts that could support the required racial animus on the Hospital's part. The Complaint lacks specifics that establish the Hospital acted with the required discriminatory intent, seeking to undermine the rights of a Black community *because* it was a Black community. *Cf. Bray*, 506 U.S. at 271-72. Plaintiffs cannot allege supporting facts because they do not exist. The Hospital is a non-profit entity whose mission is to provide healthcare services for the benefit of the community, through enhanced availability and increased healthcare services; [9] its expansion was and is not a racially-motivated destructive act. Indeed, Plaintiffs themselves allege that the Central Albina Study expressly considered the impact of the proposed expansion on the community, the difficulties that rehousing would pose, and how they could be mitigated. *See* Compl. ¶ 49. Whether Plaintiffs felt the Hospital's proposed expansion was appropriate or not, the expansion itself does not "qualify for such harsh description, and for such derogatory association with racism." *Bray*, 506 U.S. at 274.

Further, the Court's obligation on a Rule 12(b)(6) motion to draw favorable inferences from Plaintiffs' non-conclusory factual allegations does not save Plaintiffs' inadequately-pled claims. The Complaint is devoid of any support for the notion that the Hospital acted out of race-based malice, as Section 1985(3) requires. Where there is a complete absence of well-pled, non-

---

[9] The Hospital brings great value to the community, including but not limited to charity care. In fact, in 2019 alone, the Hospital provided over $466 million in charity care, medical education, and other community benefits to community members in Oregon and South Western Washington. *See* Community Benefit & Engagement, LEGACY HEALTH (last visited Feb. 26, 2023), https://www.legacyhealth.org/Giving-and-Support/community-engagement/CB-About-Us.

conclusory facts tending to reflect racial animus, no plausible inference can fill that gap. Thus, Plaintiffs' Section 1985(3) claim must also be dismissed for failure to plead a discriminatory motive.

### d. Plaintiffs Have Not Pled an Overt Act by the Hospital

Plaintiffs do not allege that the Hospital was involved in a cognizable overt act within the limitations period (i.e., two years before filing the Complaint). Moreover, Plaintiffs cannot rely on the discovery rule to make actionable acts which took place outside the statutory period. As previously detailed, the only act alleged to have taken place within the statutory period that involves the Hospital is the appraisal and addition of the Hill Block to the ICURA in 2020. This Act, however, cannot sustain Plaintiffs Section 1985 claim.

Section 1985(3) requires that a conspirator's overt acts in furtherance of the conspiracy be both the proximate cause and cause-in-fact of Plaintiffs' alleged injuries. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1039 (9th Cir. 1990) ("To be actionable, [a Section 1985 conspiracy] must result in overt acts, done in furtherance of the conspiracy, that are both the cause in fact and proximate cause of plaintiffs' injuries.") (quoting *Arnold v. International Business Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981)).

As to the Hill Block's addition to the ICURA, the Complaint contains no allegations that the Hospital was involved.

> In March 2020, despite substantial developments around the Hill Block, the property was added to the ICURA. That is, fifty years down the road, the area was once again declared "blighted" so that *the City* and *Prosper Portland* could leverage the land for additional TIF funds. In late 2020, *Prosper Portland* proposed increasing maximum indebtedness—the amount of funds that may be spent on projects, programs, and administration over the life of a TIF plan—for the ICURA by 20 percent, or $67 million, to fund the redevelopment of the Hill Block and other projects in North/Northeast Portland. Of that total proposed amount, $19 million was to be earmarked for the Williams & Russell

> development project. *The money would go directly to the City*
> *through Prosper Portland and the Portland Housing Bureau. The*
> *City council adopted the amended ICURA plan in early 2021 . . .*

*See* Compl. ¶ 76 (emphasis added). There is no mention of the Hospital at all. So, to the extent

Plaintiffs have alleged that the adding of the Hill Block to the ICURA was an overt act in

furtherance of the conspiracy, as the Complaint reads, the Hospital took no part in it. It plainly

follows that the Hospital cannot have been either the factual or proximate cause of any injuries to

Plaintiffs suffered by this overt act. Absent causation, proximate or otherwise, Plaintiffs can only

offer a "mere allegation of conspiracy without factual specificity" which is "insufficient to

support a claim." *Sanchez,* 936 F.2d at 1039 (9th Cir. 1990) (citing *Karim-Panahi v. Los Angeles*

*Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988)). The Plaintiffs' failure to plead an overt act, is

another ground on which to dismiss the Section 1985 claim against the Hospital.

## 2. Plaintiffs' Unjust Enrichment Claim Fails to Plead a Benefit Conferred on the Hospital

Plaintiffs also fail to plead necessary elements of their unjust enrichment claim against

the Hospital because they fail to allege facts establishing that the Hospital received any benefit

from its alleged actions, or from Plaintiffs.

The elements for an unjust enrichment claim are: "(1) a benefit conferred, (2) awareness

by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient

to retain the benefit without requiring her to pay for it." *Larisa's Home Care, Ltd. Liab. Co. v.*

*Nichols-Shields*, 362 Or. 115, 121, 404 P.3d 912, 915 (2017); *see also Winters v. County of*

*Clatsop*, 210 Or. App. 417, 421, 150 P.3d 1104, 1106 (2007). "Where the alleged benefit was

conferred by someone other than the plaintiff, a claim for unjust enrichment fails." *Dost v. Nw.*

*Tr. Servs.*, No. 3:11-cv-00270-ST, 2011 U.S. Dist. LEXIS 150517, at *29 (D. Or. Dec. 21,

2011).

Here, Plaintiffs allege that the Hospital's conduct has led it to "receive tax benefits via tax breaks." Compl. ¶ 90. But Plaintiffs' allegation is not only false; it is impossible. The Hospital's corporate status as a non-profit organization under Section 501(c)(3) of the Internal Revenue Code ("IRC") precludes an unjust enrichment claim based on purported tax savings.[10] *See id*. ¶ 31. As a Section 501(c)(3) organization, the Hospital is entitled to exemption from federal and state income taxes.[11] As a result, by nature of its corporate status, the alleged benefits were already enjoyed by the Hospital, and thus, the Hospital could not have received the alleged tax benefits from the City as Plaintiffs contend. *See id*. ¶¶ 74, 90.

Accordingly, because the Hospital has not received the benefits from the City that Plaintiffs rely on in order to support the "benefit" element of their unjust enrichment claim, Plaintiffs' claim should be dismissed. *See, e.g.*, *Farmers Ins. Exch.*, 2016 U.S. Dist. LEXIS 51494, at *96 (dismissing unjust enrichment claim where no benefit was conferred on defendants); *GMAC Relocation Servs. v. Herring,* No. CV 06-887-MO, 2006 U.S. Dist. LEXIS 87195, at *12 (D. Or. Nov. 30, 2006) (dismissing unjust enrichment claim where defendant never realized the benefit despite his potential to receive a benefit).[12]

---

[10] *See* About Legacy, LEGACY HEALTH (last visited Jan. 25, 2023), https://www.legacyhealth.org/About.aspx.

[11] *See* Exemption Requirements – 501(c)(3) Organizations, INTERNAL REVENUE SERVICE (last visited Jan. 25, 2023), https://www.irs.gov/charities-non-profits/charitable-organizations/exemption-requirements-501c3-organizations; *see also* Nonprofit, Tax-Exempt, Co-ops, HOAs, and Political Organizations, OREGON DEPARTMENT OF REVENUE (last visited Jan. 25, 2023), https://www.oregon.gov/dor/programs/businesses/Pages/corp-nonprofit.aspx ("If the IRS determines that you're an exempt organization, you're also exempt for Oregon.").

[12] Even if Plaintiffs had plausibly alleged that Legacy received the tax benefits from them, or if the Court finds that such allegations must be assumed true for purposes of this Motion, case law establishes that such allegations fail to adequately plead a benefit to Legacy as a matter of law, because Legacy already enjoyed the same benefits by federal legislation. *See* 26 U.S.C. § 501(c)(3). Plaintiffs have not alleged that Legacy received benefits it was not already entitled to, and consequently, Plaintiffs have not plausibly pled a conferred benefit. *See, e.g.*, *Chapman v. Asbury Auto. Grp. Inc.*, No. 3:15-cv-679, 2017 U.S. Dist. LEXIS 122937, at *15 (E.D. Va. Aug.

Plaintiffs' claim should also be dismissed because Plaintiffs fail to plead that *they* conferred the alleged benefit on Defendants. *See Atl. Nat'l Tr., LLC v. Gunderson*, 132 F. Supp. 1284, 1289 (D. Or. 2000) (dismissing unjust enrichment claim where the benefit was indirectly conferred on the defendant by a third party and therefore not by plaintiff); *see also Seib v. Metro. Life Ins. Co.*, No. 3:19-cv-00892-AC, 2021 U.S. Dist. LEXIS 112476, at *24 (D. Or. Apr. 7, 2021) (dismissing unjust enrichment claim "because [plaintiff] did not confer the benefit," and therefore, "he fails to state a plausible claim for unjust enrichment."). Plaintiffs specifically allege that the Hospital is unjustly enriched by the tax benefits it receives as a result of transferring the land to the City. Compl. ¶¶ 74, 90 ("the City informed Emanuel that it would enforce the agreements of the deed and retake possession…. However, in return for the land transfer, Emanuel would receive significant tax benefits…."). Indeed, Plaintiffs' allegations show that they did not bestow the alleged tax benefits on Defendants—rather, the Hospital received the alleged tax benefits *from the City. Id.* ¶ 74. Plaintiffs do not show they were involved in any way with this transaction.

In short, Plaintiffs have failed to plead a proper benefit for purposes of an unjust enrichment claim. The type of benefit that Plaintiffs allege cannot have actually benefited the

---

3, 2017) (finding plaintiff failed to state a claim for unjust enrichment where defendant retained the stock it already owned because there is "no basis for finding a 'benefit conferred' when the parties merely maintained the status quo."); *Davis v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1759-N, 2014 U.S. Dist. LEXIS 206200, at *6 (N.D. Tex. Sep. 23, 2014) (dismissing unjust enrichment claim as a matter of law because plaintiff "failed to establish that she provided Defendants with a benefit that they were not already entitled to receive."); *Boyce v. Freeman*, 2002 WY 20, ¶ 13, 39 P.3d 1062, 1065 (Wyo. 2002) (affirming judgment that no benefit was conferred to sustain an unjust enrichment claim because defendant "did not receive anything it did not expect to receive or to which it was not already entitled."); *Senter v. JPMorgan Chase Bank, N.A.*, 810 F. Supp. 2d 1339, 1345 (S.D. Fla. 2011) (dismissing unjust enrichment claim because "Plaintiffs were unable to adequately plead that it would be unjust to allow the Defendants to retain benefits to which they were already legally entitled.").

Hospital because the Hospital was already a tax-exempt entity and cannot have been conferred by Plaintiffs. Both conditions are required for a proper unjust enrichment claim, and thus Plaintiffs' claim should be dismissed.

### 3. Plaintiffs Fail to Allege Essential Elements of Their Nuisance Claim

Plaintiffs' nuisance claims are a clear attempt to shoehorn additional claims into their lawsuit against Defendants, and should be dismissed because Plaintiffs fail to plead facts sufficient to state a claim for either public or private nuisance. Specifically, Plaintiffs' private nuisance claim fails because Plaintiffs do not allege a cognizable injury to land they currently own and Plaintiffs' public nuisance claim fails because they do not allege a public injury shared by all members of the public. *See Galaz v. U.S.*, 175 F. App'x 831, 832 (9th Cir. 2006) (dismissing plaintiff's nuisance claim because "failure to allege a legally cognizable injury is sufficient to uphold the district court's dismissal").

### a. Plaintiffs Fail To State a Claim For Private Nuisance

In Oregon, a private nuisance is "an unreasonable non-trespassory interference with another's private use and enjoyment of land." *Drayton v. City of Lincoln City*, 244 Or. App. 144, 260 P.3d 642 (2011) (quoting *Mark v. Dept. of Fish and Wildlife*, 158 Or. App. 355, 359-60, 974 P.2d 716, 718-719 (1999)). To establish a claim for private nuisance, a plaintiff must show evidence of a causal connection between the defendant's activity and the claimed interference with the plaintiff's property. *Gronn v. Rogers Constr., Inc.*, 221 Or. 226, 239, 350 P.2d 1086, 1092 (1960). The right to recover for a private nuisance is held by the person whose land is harmed. *See Smejkal*, 274 Or. at 574.

The theory of nuisance alleged in the Complaint is that Defendants' actions created "abandoned land in Central Albina," which in turn created blight in the neighborhood. Compl. ¶ 95. However, the properties that Plaintiffs allege was harmed does not belong to them. Indeed,

the basis of the Complaint is that the land in question was transferred from the Homeowners to Defendants. Consequently, Plaintiffs' allegations make clear that they do not own, occupy, or have a legally protected interest in the land supposedly affected by the "nuisance" created. And because the land subject to the private nuisance claim does not belong to Plaintiffs, they cannot bring a private nuisance claim concerning the property. *See Hall v. State,* 326 P.3d 1165, 1172 (2014) (recognizing that a nuisance claim requires a showing of hurt, annoyance, or detriment of the plaintiff's land[] . . . [and] refers to the property interest invaded and not to the type of conduct that subjects the actor to liability") (internal citations omitted).

While Plaintiffs may argue that a relative held an interest in the properties at one point in time, that is not relevant to the analysis here. As alleged in the Complaint, Plaintiffs' relatives no longer own, occupy, or have a legally protected interest in the land at issue because they transferred ownership of the land to Defendants before the alleged nuisance began. Because Plaintiffs cannot show it is their land being harmed, Plaintiffs cannot sustain a claim for private nuisance and, as a result, Plaintiffs' private nuisance claim against the Hospital should be dismissed.

### b. Plaintiffs Fail To State A Claim For Public Nuisance

"A public nuisance has been defined as the doing of or the failure to do something that injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public, and as a nuisance which causes hurt, inconvenience, or damage to the public generally, or such part of the public as necessarily comes in contact with it." *Bowden v. Davis*, 205 Or. 421, 444, 289 P.2d 1100, 1110 (1955) (quoting 39 Am Jur 285, Nuisances, § 8). In short, a public nuisance is "an unreasonable interference with a right that is common to all members of the public." *Drayton v. City of Lincoln City*, 244 Ore. App. At 148, 260 P.3d at 645 (2011).

To begin, Plaintiffs allege that Defendants' actions created a public nuisance "in the form of abandoned land in Central Albina." Compl. ¶ 95. But abandoned or undeveloped land that has sat vacant for years is not a public nuisance. *See Bowden*, 205 Or. at 452 (considering whether an alleged public nuisance injuriously affected public health, safety, morals, or welfare). Here, the mere presence of undeveloped land sitting vacant does not constitute a menace to the safety, health, welfare, or morals of the public. Plaintiffs do not allege that the land includes dilapidated or decaying housing structures or other hazardous buildings—in fact, as Plaintiffs allege, Defendants have leveled the land which now sits vacant. *See* Compl. ¶¶ 11, 64, 66-67. Nor have Plaintiffs alleged that the undeveloped land injuriously affects the public. Therefore, as a threshold matter, Plaintiffs fail to allege a public nuisance.

Plaintiffs also specifically allege that their injury is "different from the public at large" because "their families owned the land taken by defendants and they have suffered the effects of lost inter-generational wealth and displacement." *Id*. ¶ 95. Plaintiffs plead themselves out of a public nuisance claim. In doing so, Plaintiffs expressly allege that they suffered an injury specific to them and not shared by the public at large, thereby precluding a public nuisance claim. *See State ex rel. Rudd v. Ringold*, 102 Or. 401, 405, 202 P. 734, 735 (1921) ("The difference between public and private nuisances does not depend upon the nature of the thing done, but upon the question whether it effects the general public or merely some private individual.").

Indeed, Plaintiffs do not allege that the harm they purportedly suffered as a result of Defendants' acquisition of the land is a right common to the general public, because they cannot. To the contrary, the interference that Plaintiffs allege was specific to private land owned by Plaintiffs' families (the Homeowners) and not open to the public. Such is not a right shared with the general public because the land at issue is private property and not for enjoyment by the

public at large. There is a nationwide consensus in support of this common law principle that interference with private property generally does not violate a right enjoyed by the general public. *See Rivera v. Capmark Fin., Inc.*, No. 1:12-CV-1097-CAP, 2013 U.S. Dist. LEXIS 207999, at *6 (N.D. Ga. Feb. 27, 2013) (dismissing plaintiff's public nuisance claim for failure to state a claim because dangerous conditions specific to plaintiff's private property "fails to identify a right common to all.").[13] As a result, Plaintiffs' allegations evidence only a purported private injury and no public nuisance. Because Plaintiffs fail to plausibly allege that the purported right Defendants allegedly interfered with is a right shared by the general public, Plaintiffs' public nuisance fails and should be dismissed.

---

[13] *See also Moran v. Fannie Mae*, No. 2:12-cv-212, 2012 U.S. Dist. LEXIS 99189, at *11 (E.D. Va. July 17, 2012) (dismissing plaintiff's public nuisance claim for failure to state a claim because "the public does not enjoy a right or privilege to access the staircase within Defendant's Property," and therefore, "no public right was implicated."); *Smith v. Monitor Mgmt.*, No. 27 21 86, 1991 Conn. Super. LEXIS 140, at *7 (Super. Ct. Jan. 9, 1991) (striking public nuisance claim because "[w]hile members of the general public were unquestionably welcome to enter the [mall], and even solicited to do so, nevertheless they were not entitled to do so by virtue of any public right enjoyed by citizens as part of the public."); *Phila. Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 316 (3d Cir. 1985) (finding plaintiff "suffered no 'particular damage' in the exercise of a right common to the public" because plaintiff "has been specially harmed only in the exercise of its private property rights"); *City of Gary v. Shafer*, No. 2:07-CV-56-PRC, 2007 U.S. Dist. LEXIS 75503, at *9 (N.D. Ind. Oct. 4, 2007) (finding plaintiff's allegations established "that the alleged nuisance affected a single piece of property and its single municipal entity owner," and therefore, the court found that the plaintiff's nuisance allegation did not rise to the level of broad effect that would justify classifying it as a public nuisance.").

## V. CONCLUSION

For the foregoing reasons, the Hospital respectfully requests that this Court dismiss

Plaintiffs' Complaint.

DATED: February 27, 2023

STOEL RIVES LLP


*/s/ Misha Isaak*
Misha Isaak, OSB No. 086430
misha.isaak@stoel.com
Telephone:  (503) 224-3380

and

Peter M. Ellis (*pro hac vice* forthcoming)
pellis@reedsmith.com
REED SMITH LLP
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone:  (312) 207 1000

Rizwan A. Qureshi (*pro ha vice* forthcoming)
rqureshi@ReedSmith.com
REED SMITH LLP
1301 K Street, N.W., Suite 1000 - East Tower
Washington, D.C. 20005-3373
Telephone:  (202) 414 9200

Attorneys for Defendant Legacy Emanuel
Hospital and Health Center

## LOCAL RULE 7-2 CERTIFICATION

This brief complies with the applicable word-count limitation under L.R. 7-2(b) because it contains 10,819 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED: February 27, 2023

STOEL RIVES LLP

*/s/ Misha Isaak*
Misha Isaak, OSB No. 086430
misha.isaak@stoel.com
Telephone: (503) 224-3380

*Of Attorneys for Defendant Legacy Emanuel*
*Hospital and Health Center*